ROYAL INSURANCE COMPANY OF AMERICA, Plaintiff-Appellee, v. INSIGNIA FINANCIAL GROUP, INC., *et al.*, Defendants-Appellees and Appellants (Reliance Insurance Company, Plaintiff-Appellant).

First District (2nd Division)    No. 1—00—2063

Opinion filed June 5, 2001.

Robert L. Kiesler and Patti M. Deuel, both of Kiesler & Berman, of Chicago, for appellee Royal Insurance Company of America.

Robert J. Zaideman, of Zaideman & Esrig, P.C., of Chicago, and Karen K. Coffin, of Nemecek & Cole, of Sherman Oaks, California, for Insignia Financial Group, Inc.

Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., of Chicago (Kenneth S. Ulrich and Lincoln Schroth, of counsel), for appellant Reliance Insurance Company.

JUSTICE COUSINS delivered the opinion of the court:

This is a dispute over which of two insurance companies has to provide a defense and possible indemnification to Insignia Financial Group, Inc. (Insignia), in connection with an underlying tort case filed in the circuit court of Cook County. The underlying complaint was filed against Insignia and seeks damages for *in utero* injuries sustained by Robert Kelley when his mother, Stacie Kelley, received an electric shock while she was employed by Insignia. Reliance Insurance Company (Reliance) brought a declaratory judgment action, alleging that it did not have a duty to defend or indemnify Insignia under its employers liability policy. Royal Insurance Company of America

(Royal) also sought a declaration that it did not have a duty to defend or indemnify under its general liability policy. Reliance's theory was that Robert suffered a direct injury and that only consequential bodily injuries to a child of an injured employee are permitted under its employers liability insurance. Royal's theory was that Robert suffered a consequential injury, an injury excluded by the general liability policy issued by Royal to Insignia. Royal's motion to consolidate both declaratory actions was granted.

The trial court denied Reliance's motion for judgment on the pleadings, ruling that Reliance had a duty to defend Insignia in the underlying case. The trial court granted Royal's cross-motion for summary judgment. Reliance and Insignia filed notices of appeal.

On appeal, Reliance argues that the trial court erred in determining that an injury to a fetus caused by an electrical shock to the mother which occurred during the course of employment constituted a "consequential" rather than "direct" injury, thereby triggering Reliance's duty to defend a lawsuit against the employer.

On appeal, Insignia contends that the trial court erred in granting Royal's cross-motion for summary judgment because the question of whether Robert's injury was a "direct consequence" of the shock to Stacie is an unresolved question that cannot be determined on the basis of the complaint alone and requires a full evidentiary hearing on the merits.

## BACKGROUND

On May 14, 1998, Stacie Kelley, individually and on behalf of her minor son, Robert Kelley, filed a complaint (Kelley complaint) against her employer, Insignia, seeking damages for *in utero* injuries allegedly suffered by Robert. On November 19, 1999, Robert Kelley filed a first amended complaint against Insignia that essentially contained the same allegations as the original complaint. According to the complaint, Stacie was employed by Insignia as a swimming pool attendant for the Emerald Courts apartments when the injury occurred. Insignia manages the Emerald Court apartments. The complaint further provides:

"8. On August 30, 1995, Stacie was pregnant with Robert. Robert was born on December 1, 1995.

9. On August 30, 1995, Stacie went into the pool house to turn on the lights for the pool. At that time, Stacie grabbed a metal switch to turn on the pool lights.

10. As Stacie flipped the lever for the pool lights, she received an electric shock that traveled from her hand down through her feet.

11. The electric shock traveled through Stacie's uterus and shocked Robert as well. Robert suffered brain damage as a result of

the electric shock. Today he suffers from right spastic hemiparesis, developmental delay and seizures."

Insignia tendered Robert's claim to both Royal and Reliance for a defense and possible indemnification. Insignia had purchased a general liability policy from Royal. Royal's general liability policy excludes coverage for bodily injury to a child of an employee as a consequence of bodily injury to the employee arising out of and during the course of employment. Exclusion "e" of the Royal policy states in pertinent part:

"This insurance does not apply to:
* * *

e. Employer's Liability
'Bodily injury' to:
(1) An 'employee' of the insured arising out of and in the course of:
(a) Employment by the insured; or
(b) Performing duties related to the conduct of the insured's business; or
(2) The *** child *** of that 'employee' as a *consequence of* paragraph (1) above.
This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury." (Emphasis added.)

In addition to the Royal policy, Insignia had purchased a workers' compensation and employers liability policy from Reliance. Reliance's policy covers damages for bodily injury to employees and for consequential bodily injury to a child of the injured employee, provided these damages are a direct consequence of bodily injury arising out of and in the course of employment by the employee. The Reliance policy provides in pertinent part:

"We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, includes damages:
1. for which you are liable to a third party by reason of a claim or suit against you by that third party to recover damages claimed against such third party as a result of injury to your employees.
***

3. for *consequential bodily injury to* a spouse, *child,* parent, brother or sister *of the injured employee*;

provided that these damages are the *direct consequence* of bodily injury that arises out of and in the course of the injured employee's employment by you ***." (Emphasis added.)

On March 12, 1999, Reliance filed a complaint for declaratory relief, seeking a declaration that the Reliance policy did not cover the claims made against Insignia because the Kelley complaint alleged "direct" injuries to Robert. On September 1, 1999, Royal filed a complaint for declaratory relief, alleging that its policy excluded coverage because the Kelley complaint alleged "consequential" injuries to Robert. On November 22, 1999, the court granted Royal's motion to consolidate the two actions for declaratory relief.

Subsequently, Reliance filed its motion for judgment on the pleadings while Royal filed a cross-motion for summary judgment. During arguments on the motions, Reliance argued that its policy with Insignia was inapplicable because it only covered "consequential" injuries and that Robert's injuries were "directly" caused by the electrical shock. Royal conversely contended that its policy only covered "direct" injuries and that Robert's injuries were a "consequence" of the electric shock which injured his mother. Insignia asserted that the determination of whether Reliance or Royal owed coverage could only be decided after an evidentiary hearing on the merits.

Based on the allegations of the Kelley complaint and the language of the insurance policies, the trial court concluded that Robert suffered injuries as a direct consequence of his mother's injury and that the Reliance policy therefore applied. On May 16, 2000, the trial court granted Royal's cross-motion for summary judgment and denied Reliance's motion for judgment on pleadings.

Reliance and Insignia appeal. Royal also filed a motion challenging the jurisdiction of this court to consider the appeals filed by Reliance and Insignia and requesting dismissal of this appeal. Royal's motion raises two issues: (1) Reliance lacks standing to appeal; and (2) Insignia's appeal is untimely. For the following reasons, we deny the motion to dismiss, affirm in part, and reverse in part.

## ANALYSIS

### I

●1 We initially consider Royal's motion to dismiss. First, Royal asserts that Reliance lacks standing to appeal the trial court's order granting summary judgment in favor of Royal. Although both insurers opposed each other's motions at the trial court level, Royal claims that the interests of Royal and Reliance are not adverse and Reliance was not prejudiced by the summary judgment order. Generally, a defen-

dant does not have standing to appeal a judgment in favor of a codefendant because judgment for or against one of them does nothing but establish their respective rights and liabilities toward the plaintiff. An exception exists, however, in cases where the issues between the codefendants were actively litigated in the action below. *Tisoncik v. Szczepankiewicz*, 113 Ill. App. 3d 240, 244, 446 N.E.2d 1271 (1983). Here, in its cross-motion for summary judgment, not only did Royal argue that its policy excluded coverage, but it further contended that the Kelley complaint alleged a "consequential injury" that was covered by the Reliance policy. Since the co-insurers actively litigated the common issue of whether Robert suffered a consequential injury in the trial court below, Reliance has standing to appeal the judgment in favor of Royal. *Tisoncik*, 113 Ill. App. 3d at 244.

•2 Second, Royal contends that Insignia's appeal was untimely. Jurisdiction is conferred upon the appellate court only through the timely filing of a notice of appeal. *Berg v. Allied Security, Inc.*, 193 Ill. 2d 186, 189, 737 N.E.2d 160 (2000). Generally, a notice of appeal must be filed "within 30 days after the entry of the final judgment appealed from." 155 Ill. 2d R. 303(a)(1). If a notice of appeal is filed by a party, "any other party, within 10 days *after service* upon him or her \*\*\* may join in the appeal \*\*\* by filing a notice of appeal." (Emphasis added.) 155 Ill. 2d R. 303(a)(3). Under Supreme Court Rule 12(c) (145 Ill. 2d R. 12(c)), service by mail is complete four days after mailing. The four-day period is calculated by excluding the day on which the notice is mailed and including the following four days after the notice is mailed. *Acosta v. Sharlin*, 295 Ill. App. 3d 102, 105, 692 N.E.2d 396 (1998).

•3 In the instant case, Reliance filed its notice of appeal on June 14, 2000. Insignia alleges that Reliance mailed its notice to Insignia on the same day. Under Rule 12(c) (145 Ill. 2d R. 12(c)) and *Acosta*, service of Reliance's notice of appeal was not complete until four days after it was mailed, on June 18, 2000. Therefore, pursuant to Rule 303(a)(3) (155 Ill. 2d R. 303(a)(3)), Insignia did not have 10 days from June 14, 2000, but, rather, had 10 days from June 18, 2000 (until June 28, 2000), to file its notice of appeal. Since Insignia filed its notice of appeal on June 27, 2000, its appeal was timely.

## II

•4 We now turn to the merits of the instant appeal. This court reviews *de novo* an order granting a motion for summary judgment (*McDaniel v. Ong*, 311 Ill. App. 3d 203, 208, 724 N.E.2d 38 (1999)) or a trial court's ruling upon a motion to dismiss (*Sherrod v. Ramaswamy*, 314 Ill. App. 3d 357, 360, 732 N.E.2d 87 (2000)). When a declaratory judgment action is brought to determine an insurer's duty to defend,

the court must look only to the complaint in the underlying action to determine whether the allegations show that the claim falls within or potentially within coverage. *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 52, 514 N.E.2d 150 (1987). Thus, only the allegations in the underlying complaint, considered in the context of the relevant policy provisions, should determine whether an insurer owes a duty to defend an action brought against the insured. *Bituminous Casualty Corp. v. Fulkerson*, 212 Ill. App. 3d 556, 562, 571 N.E.2d 256 (1991). A trial court may consider evidence beyond the underlying complaint only if such evidence does not tend to determine an issue crucial to the underlying lawsuit. *Fidelity & Casualty Co. v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, 304-05, 461 N.E.2d 471 (1983).

In the instant case, the complaint alleges that Stacie received an electric shock that traveled from her hand down through her feet. Further, the "electric shock traveled through Stacie's uterus and shocked Robert as well" and "Robert suffered brain damage as a result of the electric shock." Reliance's policy covers "*consequential* bodily injury" to a child of an injured employee "provided that these damages are the *direct consequence* of bodily injury that arises out of and in the course of the injured employee's employment." (Emphasis added.)

Reliance initially relies on the Corpus Juris Secundum (C.J.S.) definition of "consequential" and "direct" damages to argue that Robert's alleged injury must be deemed direct and falls outside the scope of coverage. 25 C.J.S. *Damages* § 2 (1966). The C.J.S. definition of consequential damages states:

> "Consequential damages are such as are not produced without the concurrence of some other event attributable to the same origin or cause; such damage, loss, or injury as does not flow directly and immediately from the act of the party, but only from the consequences or results of such act." 25 C.J.S. *Damages* § 2 (1966).

C.J.S. also defines direct damages as follows:

> "Direct damages are such as result from an act without the intervention of any intermediate controlling or self-efficient cause. Direct damages include all such injurious consequences as proceed from, or have direct causal connection with, such consequences." 25 C.J.S. *Damages* § 2 (1966).

Under these definitions, Reliance asserts that a direct injury occurs due to a single cause without the intervention of another act. Reliance further claims that a consequential injury involves two causes—one is the initial injury to the employee, and the second is the injury to the child which is "attributable to the same origin or cause." According to

Reliance, Robert suffered injury because of a single cause—the electric shock—and his injury should therefore be classified as direct.

Royal, on the other hand, argues that the C.J.S. definition of "consequential *damages*" does not apply to the term "consequential *injury*" contained in the Reliance policy. Instead, Royal urges the common, ordinary understanding of the term "consequence" as defined in the dictionary:

> "1. Something that is produced by a cause or follows from a form of necessary connection or from a set of conditions; a natural or necessary result \*\*\*. \*\*\* 3. The act or action of following in succession: sequence." Webster's Third New International Dictionary 482 (1986).

Applying the dictionary definition, Royal posits that Robert was allegedly injured as a consequence of the electric shock to his mother. According to Royal, the common definition of the word "consequence" does not require two separate events. The electric shock that "traveled through Stacie's uterus and shocked Robert as well" was sufficient to cause a consequential injury to Robert.

Reliance also claims that a series of workers' compensation cases are analogous to the instant case. The cases held that the derivative injury doctrine does not bar a child from suing an employer for *in utero* injuries that occurred during the course of the mother's employment. For example, in *Thompson v. Pizza Hut of America, Inc.*, 767 F. Supp. 916 (N.D. Ill. 1991), a pregnant employee was exposed to carbon monoxide and other harmful fumes for three days while she worked at Pizza Hut. Her son was later born with severe birth defects. The child filed a suit against Pizza Hut, seeking recovery for his personal injuries which were incurred while his mother was acting as an employee in the course of her employment. *Thompson*, 767 F. Supp. at 917.

Pizza Hut argued that the exclusive remedy provision of the Illinois Workers' Compensation Act (the Act) (820 ILCS 305/1 *et seq.* (West 1998)) barred the child's actions because his injuries "derived from" injuries suffered by his mother. *Thompson*, 767 F. Supp. at 918. The exclusive remedy provision of the Act stated:

> " 'No common law or statutory right to recover damages from the employer \*\*\* for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to \*\*\* any one wholly or partially dependent upon him \*\*\*.' " (Emphasis omitted.) *Thompson*, 767 F. Supp. at 918, quoting Ill. Rev. Stat. 1991, ch. 48, par. 138.5(a) (now 820 ILCS 305/5(a) (West 1998)).

Since the child was bringing a claim based on his own injuries that occurred while *in utero*, the court found that the child's claim did not

"derive from" his mother's injury. The court contrasted claims by family members that stemmed from employee injuries, like suits for loss of consortium, with the child's injury *in utero*. The court concluded that the child had status to bring a cause of action against Pizza Hut for his own injuries. *Thompson*, 767 F. Supp. at 918-19.

Similarly, the California Supreme Court reached the same conclusion in another workers' compensation case, *Snyder v. Michael's Stores, Inc.*, 16 Cal. 4th 991, 945 P.2d 781, 68 Cal. Rptr. 2d 476 (1997). In *Snyder*, the court held that the workers' compensation exclusivity rule did not bar a child's action against her mother's employer for the child's *in utero* injuries allegedly caused when her mother breathed toxic fumes in the workplace. *Snyder*, 16 Cal. 4th at 1000, 945 P.2d at 786, 68 Cal. Rptr. 2d at 481. The court explained that a "derivative injury" by definition would simply not exist in the absence of injury to the employee. *Snyder*, 16 Cal. 4th at 998, 945 P.2d at 785, 68 Cal. Rptr. 2d at 480. Since the child did not claim any damages for injury to her mother or allege that her recovery depended on injuries suffered by her mother, the court held that the child had status to independently bring a cause of action against her mother's employer for the child's own injuries. *Snyder*, 16 Cal. 4th at 1000, 945 P.2d at 786, 68 Cal. Rptr. 2d at 481. See also *Pizza Hut of America, Inc. v. Keefe*, 900 P.2d 97 (Colo. 1995) (exclusivity provision of workers' compensation act did not bar parents' action against employer for wrongful death of their child from prenatal injuries allegedly caused by mother's employment).

Reliance contends that the term "derivative injury" used in the workers' compensation cases carries the same meaning as "consequential injury" in its insurance policy. The only case that Reliance cites in support of this contention, *Moran v. Nafi Corp.*, 370 Mich. 536, 122 N.W.2d 800 (1963), is inapposite. In *Moran*, the Michigan Supreme Court was deciding for the first time whether a wife's loss of consortium action against her husband's employer was barred by the exclusivity provisions of Michigan's workers' compensation act. In its discussion of one of the employer's arguments,[1] the court used the terms "consequential" and "derivative" injury interchangeably. However, the court was not even discussing the term "derivative" injury in the context of workers' compensation exclusion. Moreover, the authority cited by Reliance relates to an employer's statutory li-

---

[1]The court rejected the employer's argument that the "derivee's" (wife's) loss of consortium action should be barred because the principal's (husband's) action is barred in tort for reasons of the insufficiency of the elements of the main tort action. *Moran*, 370 Mich. at 541, 122 N.W.2d at 802.

ability under a workers' compensation scheme and not the construction of the terms of an insurance policy.

Next, we address Insignia's contention that both carriers potentially owe indemnity and thus both carriers have defense obligations. Insignia argues that it is impossible to determine whether Robert suffered a "direct" or "consequential" injury without resorting to a full evidentiary hearing because expert testimony on this issue conflicts. Specifically, Insignia refers to extrinsic evidence in the form of excerpts from deposition testimony by several medical experts concerning the biological cause of Robert's injury. For example, Dr. Fish testified that Robert likely suffered a consequential injury[2] whereas Dr. Giles opined that Robert's brain was directly damaged by electricity. Dr. Swisher, on the other hand, believed that Robert suffered a combination of direct and consequential injuries. In our view, it is unnecessary to go beyond the allegations of the complaint to determine whether Royal or Reliance owes Insignia a duty to defend. Moreover, the examination of expert testimony relating to the physical cause of Robert's injury would impermissibly tend to determine the causation issue of the underlying lawsuit. *State Farm Fire & Casualty Co. v. Shelton*, 176 Ill. App. 3d 858, 863, 531 N.E.2d 913 (1988) (declaratory judgment court must not determine disputed factual issues that are crucial to insured's liability in underlying personal injury suit).

Finally, Royal argues that because Robert was *in utero* at the time of the shock to his mother, his alleged injury is also clearly a consequence of injury to Stacie. If Stacie had not been shocked, Robert would not have suffered his injuries. Royal also acknowledges that Illinois courts have not addressed the application of the employer's liability exclusion under the circumstances at issue here, nor considered whether harm to a fetus as a result of electric shock to the mother is a consequential injury. *Oates v. State*, 157 Misc. 2d 618, 597 N.Y.S.2d 550 (1993), a New York court of claims case, is the only decision cited by Royal that is similar to the instant case. In *Oates*, the New York court of claims examined a general liability insurance policy to determine whether a child's *in utero* injury allegedly caused by the mother's exposure to lead paint during the course of employment was excluded from coverage. The policy's employment exclusion provision stated that the insurance did not apply to bodily injury to:

> "(1) An employee of the insured arising out of and in the course of employment of the insured; or

---

[2] Dr. Fish's theory indicates that the electric shock caused the mother to violently jerk backwards. This jerking, in turn, likely caused a clot in the placenta to break off, travel to the fetus' brain and cause a stroke.

(2) The \*\*\* child \*\*\* of that employee as a consequence of (1) above." *Oates*, 157 Misc. 2d at ___, 597 N.Y.S.2d at 554.

The court employed the common understanding of the phrase "as a consequence of" by finding that the child's bodily injury resulted as well from her mother's injury. *Oates*, 157 Misc. 2d at ___, 597 N.Y.S.2d at 555. Since the mother was subjected to the same poisonous condition as the fetus, the court concluded that the child suffered bodily injury as a consequence of her mother's injury during the course of employment. The court therefore held that the child's claim was excluded from coverage under the general liability policy. *Oates*, 157 Misc. 2d at ___, 597 N.Y.S.2d at 555.

Royal further argues that the allegations in the underlying complaint demonstrate that Robert alleged an injury that was sustained as a result of electrical shock suffered by his mother, and, as recognized by *Oates*, these circumstances give rise to a consequential injury suffered by the fetus. Therefore, Royal posits, such a claim falls squarely within the scope of the employer's liability exclusion contained in the Royal contract of insurance.

The trial court below inferred from the face of the complaint that an electric shock passing through the mother constitutes an injury to the mother for the purposes of construing the insurance policies. The court did not find the workers' compensation cases cited by Reliance (*Thompson*, *Snyder* and *Keefe*) to be helpful in this insurance coverage case. Instead, the court found *Oates* to be most persuasive because it contained essentially the same exclusion provision found in Royal's policy. Basing its decision solely upon the complaint and the language of the two insurance policies, the trial court held that Reliance had a duty to defend while Royal had a duty neither to defend nor indemnify based upon its exclusion.

An insurer's duty to defend is much broader than its duty to indemnify its insured. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 393-94, 620 N.E.2d 1073 (1993). "If the facts alleged in the underlying complaint fall within, *or potentially within*, the policy's coverage provisions, then the insurer has a duty to defend the insured in the underlying action." (Emphasis added.) *Crum*, 156 Ill. 2d at 393. In the instant case, Royal argues that Robert suffered a consequential injury while Reliance contends that the injury was direct. We note that no Illinois case has addressed the application of the employer's liability exclusion under the circumstances at issue here. In our view, *Oates* is not controlling.

•5 After examining the complaint and the language of the insurance policies, we conclude that the trial court erred in granting summary judgment in favor of Royal because factual issues remain to be

determined relative to whether Robert suffered either a direct injury or a consequential injury as a consequence of the injury to his mother. We cannot say that the facts alleged in the underlying complaint preclude coverage under Royal's general liability policy. Accordingly, we reverse the trial court's decision to grant Royal's cross-motion for summary judgment. Further, we affirm the trial court's decision to deny Reliance's motion for judgment on the pleadings and deny Royal's motion to dismiss.

Affirmed in part and reversed in part.

CAHILL, P.J., and McBRIDE, J., concur.