NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, Plaintiff-Appellant, v. R. OLSON CONSTRUCTION CONTRACTORS, INC., d/b/a R. Olson Concrete Construction, *et al.*, Defendants-Appellees.

Second District   No. 2—01—0237

Opinion filed April 18, 2002.

William K. McVisk, of Johnson & Bell, Ltd., of Chicago, for appellant.

Michael D. McCormick and Edward F. McGinnis, both of Momkus, Ozog & McCluskey, L.L.C., of Downers Grove, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

In December 1999, plaintiff, National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National), filed a complaint for a declaratory judgment against R. Olson Construction Contractors, Inc., d/b/a R. Olson Concrete Construction (Olson), and Leroy and Donna Schmidt (the Schmidts). National sought a determination that it was not obligated to defend or indemnify Olson in an action brought by the Schmidts (Schmidt action or underlying action) against Olson for injuries Leroy Schmidt (Schmidt) suffered at a construction site while an employee of Meyer Material Company (Meyer).

National had issued a comprehensive general liability policy in which Meyer was an insured and Olson was named in an endorsement as an additional insured with respect to liability arising out of Meyer's operations for Olson. The endorsement specified that the policy would not cover Olson's liability arising from its own negligence or that of its servants, agents, or employees. Olson was a concrete subcontractor for the construction project and contracted with Meyer to have Meyer deliver concrete to the construction site. Meyer employed Schmidt as a driver of one of its concrete delivery trucks. Schmidt was allegedly injured when he fell down while washing down his ready mix concrete truck inside a building at the project site.

Schmidt filed a complaint (underlying complaint) against Olson and others, alleging that various negligent acts or omissions on the part of Olson caused Schmidt's injuries. Based on the same allegations, the underlying complaint also sought damages from Olson, claiming that Donna Schmidt, Leroy's wife, suffered a loss of consortium. Meyer was not named as a defendant in the underlying complaint. Olson tendered the defense of the Schmidt action to

National, which declined the tender. Olson in turn filed a third-party complaint for contribution among tortfeasors against Meyer pursuant to the Joint Tortfeasor Contribution Act (740 ILCS 100/1 *et seq.* (West 1998)). The third-party complaint alleged that Meyer was guilty of the negligent acts or omissions that proximately caused Schmidt's injuries and that, if Olson should be found liable to the Schmidts for the injuries alleged in the underlying complaint, it will be because of the wrongful actions and omissions of Meyer and Olson would be entitled to contribution should a judgment for damages be entered against Olson.

National and Olson filed cross-motions for summary judgment. National's position, in essence, was that it should not be required to defend Olson in the underlying action because Olson could only be found liable if its own negligence proximately caused Schmidt's injuries and the National policy excluded coverage for Olson's liability if it resulted from Olson's own negligence. The trial court granted Olson's motion, however, concluding that, even if Olson were found liable in the Schmidt action for Olson's own negligence, some portion of Schmidt's possible award could potentially be attributable to acts arising out of Meyer's ongoing operations performed for Olson; therefore, National had a duty to defend Olson in the Schmidt action. National timely appeals. We conclude that National does not have a duty to defend Olson, and we reverse the judgment.

The record shows that there was an additional insured endorsement entitled "ADDITIONAL INSURED—OWNERS, LESSEES OR CONTRACTORS (FORM B)" that modified the insurance provided under the policy. The endorsement stated:

"This endorsement modifies insurance provided under the following:

COMMERICAL GENERAL LIABILITY
COVERAGE PART SCHEDULE

Name of Person or Organization:

CERTIFICATE HOLDERS LISTED ON FILE WITH THE INSURANCE COMPANY. ADDITIONALLY, COVERAGE SHALL NOT APPLY TO ANY LIABILITY RESULTING FROM THE CERTIFICATE HOLDER'S OWN NEGLIGENCE OR THE NEGLIGENCE OF ITS SERVANTS, AGENTS OR EMPLOYEES.
***

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured."

Olson was supplied with a certificate of insurance that specified

that the policy provides general liability insurance coverage to Meyer. An attachment to the certificate states:

"ATTACHMENT to Certificate of Insurance dated January 1, 1997, naming Meyer Material Company as Insured and R. Olson Construction Co. as Certificate Holder:

Re: All Jobs

R. Olson Construction Co. Contrs. Inc. is named an additional Insured as its interests may appear, with respect to work performed by Meyer Material Company for all jobs, under the terms of ISO form No. CG20101185, Additional Insured—Owners, Lessees or Contractors (Form B), except that coverage shall not apply to any liability resulting from R. Olson Construction Co. Contrs. Inc.'s own negligence or the negligence of its servants, agents or employees."

The Schmidts' unverified complaint alleged, among other things, that on January 15, 1997, Olson occupied, operated, managed, maintained and controlled the construction project site known as Turnberry Lakes Building No. 4 in Hanover Park and that Olson was acting as a subcontractor engaged in the business of doing concrete work inside the building at the project site. Schmidt was at the site driving a truck to deliver ready mix concrete. While Schmidt was washing down his truck inside the building in the area designated for the trucks to be washed down, there were objects and debris on the ground, including a piece of reinforcing bar, on which Schmidt "struck his foot, lost his balance, and fell to the ground."

Schmidt further alleged that Olson had a duty to exercise ordinary care to see that the premises were reasonably safe for the use of those entering upon the premises and that, notwithstanding that duty, Olson committed various acts and omissions in that it designated a washdown area when it knew or in the exercise of reasonable care should have known that the area was dangerous and unsafe and involved an unreasonable risk of harm to the truck drivers; directed the drivers to wash their trucks in the area; failed to inspect the area; failed to clean up and remove objects from the area; failed to provide adequate illumination of the area; and failed to warn Schmidt of the dangerous condition of the area. According to the underlying complaint, these acts and omissions proximately caused Schmidt's injuries. Similar allegations were made against other entities involved in the construction project. However, the underlying complaint did not allege that Meyer was negligent or contributed to Schmidt's injuries.

When Olson filed its third-party complaint against Meyer seeking contribution, Olson made similar allegations of negligence against Meyer. Olson also alleged that Meyer was Schmidt's employer and

owed a duty to exercise ordinary care to provide safe working conditions and to provide proper training and supervision to its employees and that Meyer breached its duty toward Schmidt and these breaches of this duty proximately resulted in injuries to Schmidt.

The record contains a letter in which Olson tendered its defense of the Schmidt action to National. Olson also noted in the letter that it had placed its own, separate insurance carrier on notice of the matter but had requested that it not become involved in the matter. National refused to accept Olson's tender because the underlying complaint alleged that Olson was being sued for its own negligence or that of its agents, servants, or employees.

■ In appeals from summary judgment rulings, our review is *de novo*. *Delaney v. McDonald's Corp.*, 158 Ill. 2d 465, 467 (1994). Summary judgment is to be granted only if the pleadings, affidavits, depositions, admissions, and exhibits on file show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2000); *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333 (1996).

■ The construction of an insurance policy similarly presents a question of law and is also subject to *de novo* review. Where the words of an insurance policy are clear and unambiguous, courts should give effect to the plain and obvious meaning of those words. *Butera v. Attorneys' Title Guaranty Fund, Inc.*, 321 Ill. App. 3d 601, 603-04 (2001). Although provisions that limit or exclude insurance coverage must be construed liberally in favor of the insured and against the insurer, if an exclusion is clear and unambiguous and does not contravene public policy, it will be applied as written. *Shriver Insurance Agency v. Utica Mutual Insurance Co.*, 323 Ill. App. 3d 243, 248 (2001).

National first argues that the additional insured endorsement clearly and unambiguously excludes coverage for the allegations in the underlying complaint because the only manner in which Olson can be liable in the underlying action is if Olson is found negligent and the policy excludes such liability even if it arose out of Meyer's operations. Olson states that it is not surprising that Meyer is left out of the Schmidt complaint as Schmidt does not have a common-law remedy against his employer, Meyer.

Olson asserts that it is fair for a court to consider a third-party complaint in determining coverage since injured employees are not likely to include claims against their employers. Olson relies on *Great American Insurance Co. v. West Bend Mutual Insurance Co.*, 311 Ill. App. 3d 534 (2000) (under former Structural Work Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 60 *et seq.*), reviewing court determined that trial court could look to third-party complaint to decide whether

insurer had duty to defend on the basis of imputed or vicarious liability of a party in control of the work); see also *West Bend Mutual Insurance Co. v. Sundance Homes, Inc.*, 238 Ill. App. 3d 335 (1992) (related case). We agree with National's position.

■ Whether an insurer has a duty to defend depends on a comparison of the allegations of the underlying complaint to the relevant policy provisions. *Shriver*, 323 Ill. App. 3d at 247. When a declaratory judgment action is brought to determine an insurer's duty to defend, a court must look solely to the complaint in the underlying action to determine whether the allegations show that the claim falls within or potentially within the coverage of the policy. *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 52 (1987); *Royal Insurance Co. of America v. Insignia Financial Group, Inc.*, 323 Ill. App. 3d 58, 63-64 (2001); see *Konami (America), Inc. v. Hartford Insurance Co. of Illinois*, 326 Ill. App. 3d 874 (2002) (in Illinois, an insurer's duty to defend must be based on an examination of the underlying complaint).

If it is clear from the face of the underlying complaint that the allegations failed to state facts that bring the case within, or potentially within, the policy's coverage, the insurer may properly refuse to defend the insured. *State Farm Fire & Casualty Co. v. Hatherley*, 250 Ill. App. 3d 333, 336 (1993). However, an insurer may also be required to defend if the insurer possesses knowledge of true but unpleaded facts that, when taken together with the allegations in the complaint, indicate that the claim is within or potentially within the policy coverage. *Shriver*, 323 Ill. App. 3d at 247.

■ A trial court may consider evidence beyond the underlying complaint only if such evidence does not tend to determine an issue crucial to the underlying lawsuit. *Royal*, 323 Ill. App. 3d at 64. Only if the coverage issue involves such ancillary matters as whether the insured paid the premiums or whether he is the proper insured under the policy can the court look beyond the complaint. *State Farm Fire & Casualty Co. v. Shelton*, 176 Ill. App. 3d 858, 867 (1988). Thus, for example, an insurer may challenge the existence of a duty to defend by offering evidence that the insured's actions fell within a policy exclusion so long as a crucial issue in the underlying lawsuit will not be determined. This practice is consistent with the prerogative of a party to present the type of evidence normally allowed when a court considers a motion for summary judgment in a declaratory judgment proceeding. However, at this stage, a court must not adjudicate disputed facts crucial to determining liability in the underlying action. See *Shelton*, 176 Ill. App. 3d at 866-67. The scope of a declaratory judgment action to determine the duty to defend is necessarily limited

because problems of *res judicata* or collateral estoppel may otherwise arise out of the declaratory judgment court's determination of issues crucial to the insured's liability in the personal action. *Shelton,* 176 Ill. App. 3d at 867.

■ Olson had the burden to establish that the allegations in the Schmidt action triggered coverage under National's policy but has failed to do so. See *Roberts v. Allstate Life Insurance Co.,* 243 Ill. App. 3d 658, 660 (1993). The Schmidt complaint sets forth a negligence theory of liability. It alleges that Olson's negligent acts or omissions proximately caused Schmidt's injuries. However, the policy exclusion clearly states that Olson's own negligence is not covered. All of the allegations against Olson are for its own negligence and not for Meyer's negligence. The complaint does not allege that Olson was somehow strictly liable or vicariously liable for Meyer's conduct. There is no indication that Meyer was anything but an independent contractor, so Olson cannot be vicariously liable for the negligent acts of Meyer resulting in harm to Meyer's employee. There are no allegations in the underlying complaint that Olson was vicariously liable because it retained control over the operative details of Meyer's work. See *Connaghan v. Caplice,* 325 Ill. App. 3d 245, 250 (2001).

Olson argues that the trial court properly considered the allegations of its third-party complaint to find that Olson was potentially liable; that the National endorsement was ambiguous; and that the exclusion is against public policy and void because it appears to provide illusory coverage. We disagree on all points. We adhere to the rule that a trial court must look only to the underlying complaint to determine whether there is a duty to defend. Issues similar to those raised by Olson were addressed in *American Country Insurance Co. v. Cline,* 309 Ill. App. 3d 501 (1999), which relied on *American Country Insurance Co. v. Kraemer Brothers, Inc.,* 298 Ill. App. 3d 805 (1998). We find *Cline* instructive.

In *Cline,* the complaint arose out of an underlying tort action in which Robert Cline sought damages for injuries he allegedly sustained while working for Hinsdale Electric Company, a subcontractor on a construction site. Pepper Construction Company of Illinois was the general contractor, and Andersen Consulting Company, Inc., owned the site. American Country Insurance Company filed a complaint seeking a declaratory judgment that it had no duty to defend any of the defendants, Cline, Pepper, and Andersen. Hinsdale had agreed to and did obtain comprehensive general liability insurance from American, naming both Pepper and Andersen as additional insureds. An endorsement stated that the coverage afforded to an additional insured was solely limited to liability specifically resulting from the conduct of the

named insured that may be imputed to the additional insured. The endorsement provided no coverage to an additional insured for liability arising out of the claimed negligence of the additional insured by virtue of the conduct of the named insured.

Cline's complaint alleged that he was injured at the site when an electric conduit pipe fell upon the ladder he was working on and caused him to fall. The complaint alleged, among other things, that Pepper was actively engaged in the supervision, management, and control of the construction and that Andersen was actively supervising the work in progress and that Pepper and Andersen carelessly and negligently failed to secure the conduit pipe, failed to design and provide for adequate support for the piping, and failed to warn that the pipe was not secure.

Pepper tendered its defense of the Cline suit to American, but American refused the tender. Pepper then filed a third-party complaint against Hinsdale seeking contribution and alleging breach of contract. The trial court granted summary judgment to Pepper and Andersen and denied American's motion for judgment on the pleadings. American appealed.

The *Cline* court first determined that the trial court erred in finding that the additional insured endorsement was illusory and void as against public policy. The reviewing court noted that limiting coverage only to a narrow class of claims recognized that businesses in the construction industry carry coverage for liability arising out of their own work; it was assumed that Pepper would have its own general liability coverage.

The *Cline* court relied on *Kraemer Brothers*, where that court considered a similar policy endorsement limiting coverage and rejected a similar argument by Kraemer, the additional insured, that the insurer's coverage was illusory because it was virtually impossible to conceive of a factual scenario where Kraemer could be held vicariously liable for a subcontractor's acts and omissions. The *Kraemer* court found, for example, that the imputed negligence coverage in the policy could include claims based on strict liability such as where the general contractor had a nondelegable duty or where inherently dangerous activities were involved. *Kraemer Brothers*, 298 Ill. App. 3d at 814; see *Cline*, 309 Ill. App. 3d at 508. As in *Kraemer*, the *Cline* court concluded that the limited coverage was neither illusory nor void as against public policy.

The *Cline* court also agreed that, since an insurer's duty to defend depends on whether the *underlying* complaint alleges facts within or potentially within the coverage of the insurance policy, the insurer had no duty in that case to defendant because Cline's complaint did not al-

lege negligence on the part of the named insured (Hinsdale), nor did it allege negligence that could be imputed to the additional insureds. *Cline*, 309 Ill. App. 3d at 512. The *Cline* court explained:

> "[T]he named insured, Hinsdale, is never named as a defendant in the Cline complaint, while the additional insureds are accused of several acts of negligence. Therefore, it is unclear how the additional insured endorsement granting coverage to additional insureds 'solely limited to liability specifically resulting from the conduct of the Named Insured which may be imputed to the Additional Insured' has been satisfied, considering Hinsdale has not been accused of any wrongful conduct." *Cline*, 309 Ill. App. 3d at 514.

The court further observed that, *even if* it were to look to the allegations in Pepper's third-party complaint for contribution, the court would have to presume that both the named insured and the additional insureds were responsible and this would be outside the ambit of the coverage provided in the endorsement, which limited coverage to liability solely and specifically resulting from the conduct of the named insured. In addressing this issue, the court observed that a contribution claim presumes that both the third-party plaintiff and the third-party defendant are liable, since the third-party plaintiff will only require contribution if it was first held liable to the underlying plaintiff. *Cline*, 309 Ill. App. 3d at 514 n.2.

In addressing the issue whether the trial court could find potential liability by examining the third-party complaint in addition to the underlying complaint, the *Cline* court was merely responding to an argument raised by Pepper and Andersen that the court should follow *West Bend Mutual Insurance Co. v. Sundance Homes, Inc.*, 238 Ill. App. 3d 335 (1992), a case that considered allegations in both the underlying complaint and a third-party complaint to find a duty to defend. However, *Sundance Homes* concerned an alleged violation of the Structural Work Act, a cause of action separate and distinct from one based on common-law negligence. See *National Union Fire Insurance Co. of Pittsburgh, Pennsylvania v. Glenview Park District*, 158 Ill. 2d 116, 121-22 (1994) (claim is based on wilful violation of the Act where the person having charge of the work knew, or in the exercise of ordinary care would have known, of the dangerous condition; Act protects work activities of particularly hazardous nature; duty to defend must be determined solely from allegations in underlying complaint). We observe that the Act has been abolished. See 740 ILCS 150/0.01 through 9 (West 1994) (repealed by Pub. Act 89—2, § 5, eff. February 14, 1995).

In *Great American Insurance Co. v. West Bend Mutual Insurance*

*Co.,* 311 Ill. App. 3d 534 (2000), a case related to *Sundance Homes,* the reviewing court took the position that the Act renders all parties having charge of the work liable for any injuries resulting from any dangerous conditions about which they should have known. The court was concerned that liability could be imputed to an additional insured where the endorsement provided no coverage for its own negligence but it was alleged that the additional insured had the right to control the construction; the court therefore also looked to the third-party complaint for contribution in determining that the insurer had a duty to defend. Because that case concerned liability attributable to the additional insured under the Structural Work Act, its ruling regarding the third-party complaint should be limited to the facts of the case and will not be followed here.

In the present case, we have examined the underlying complaint and the endorsement. We conclude that the additional insured endorsement is clear and unambiguous. Coverage for the additional insured requires that the liability must arise out of Meyer's operations, but that coverage is specifically limited in that it does not apply to any liability resulting from Olson's own negligence. There is no issue of strict or imputed liability applicable here, and the limited coverage is neither illusory nor void as against public policy. We see no reason why the trial court should have looked to Olson's third-party complaint to determine potential liability and the duty to defend. The trial court's approach was contrary to the general rule that a court must look only to the underlying complaint. To the extent that *Cline, Great American,* and *Sundance* suggest that a trial court should look to a third-party complaint to determine the potential duty to defend, we decline to follow that approach, absent some unusual or compelling circumstances, which are not present here.

■ Finally, we observe that the underlying complaint against Olson, the potential insured, would trigger a duty to defend against the allegations of that complaint against Olson, not a duty to defend or *prosecute a separate suit brought by Olson against another party.* National had no way of knowing whether the facts alleged in the third-party complaint were true but unpleaded facts without conducting an investigation. While an insurer must defend where it possesses knowledge of true but extraneous "facts" that, when taken together with the allegations of the complaint, indicate that the claim is within or potentially within the policy coverage, this doctrine was not meant to be applied to situations such as existed in this case—where the only extraneous "facts" the insurer possessed were the allegations supplied by the insured in a third-party complaint. See *Shriver Insurance Agency v. Utica Mutual Insurance Co.,* 323 Ill. App. 3d 243, 251 (2001).

We hold that National did not have a duty to defend Olson. We reverse the order of the circuit court of Du Page County that granted summary judgment to Olson and denied National's motion. Summary judgment is hereby entered in favor of National.

Reversed.

BOWMAN and BYRNE, JJ., concur.