### CINCINNATI INSURANCE COMPANY, Plaintiff,

v.

### DAWES RIGGING & CRANE RENTAL, INC., & Steve Toedt, Defendants.

No. 02–2208.

United States District Court,
C.D. Illinois,
Urbana Division.

June 16, 2004.

---

Daniel Litchfield, Esq., Hope G. Nightingale, Esq., Litchfield Cavo, Chicago, IL, for Plaintiff.

Robert C. Moore, Esq., Colleen Catherine Abbott, Esq., Stone & Moore, Chicago, IL, for Defendant Dawes Roggomg.

Thomas Q. Keefe, Jr., Thomas Q. Keefe, Jr., P.C., Belleville, IL, for Defendant Steve Toedt.

## ORDER

McCUSKEY, District Judge.

Steve Toedt suffered a serious physical injury in the course of his employment, and he filed a lawsuit seeking to recover damages from several companies he believed contributed to his unsafe working environment. One of those companies, Dawes Rigging and Crane Rental, Inc., looked to Cincinnati Insurance Company to defend it in the negligence suit in state court. Cincinnati, however, filed a complaint in this court seeking a declaratory order that it has no duty to defend Dawes in the case filed by Toedt. Both parties seek summary judgment on this issue, and for the reasons discussed below, judgment is entered in favor of Dawes.

## BACKGROUND

In 1998, Dawes leased a crane to Kelly Construction, Inc. for use at the A.E. Staley Manufacturing Company in Decatur, Illinois. At some point, a Dawes mechanic determined that the crane needed a new hydraulic holding valve that supported the boom of the crane. According to his complaint, Toedt, as an employee of Kelly, "was required to and was in fact assisting in the maintenance of the aforementioned crane under the supervision of employees" of Dawes. Toedt's complaint in state court alleges that Dawes acted negligently, through its employees, in securing the boom of the crane, which resulted in "severe painful and permanent injuries" when the boom fell on him.

Dawes believed that Kelly's insurance carrier would be responsible for its defense in the Toedt action. Accordingly, Dawes tendered its defense to Cincinnati, claiming that it was an "additional insured" on Kelly's general liability insurance policy. Cincinnati disagreed with Dawes's interpretation of the Kelly insurance policies, and it brought the dispute to this court for resolution.

### 1. Agreements between Dawes and Kelly

In memorializing the leasing of the crane, Dawes and Kelly executed an Equipment Lease on April 17, 1998. Several sections of that document are relevant to the issues before this court. Portions of paragraphs two and four provide that Kelly is responsible for insurance coverage for the machine and physical damage, with Dawes named as an additional insured. Paragraph nine requires Kelly to "at [its] own expense maintain the Equipment in good working order and condition." And paragraph ten notes that the contract is deemed to have been made in the state of Wisconsin.

In addition to the written lease agreement, Dawes and Kelly reached an understanding about maintenance for the cranes. Kelly paid Dawes a weekly fee to have a Dawes mechanic available in Decatur to perform any needed equipment repairs or maintenance. This agreement is unwritten, and the parties disagree as to the precise contours of that agreement in terms of which company controlled and directed the repair work.

### 2. Kelly's Insurance Policies

Cincinnati attached to its motion for summary judgment copies of the insurance policies it had issued to Kelly for the time period during which Toedt's accident occurred. Kelly had procured a Commercial General Liability policy, number 501 59 71, ("CGL policy") and a Commercial Umbrella Liability policy, number 441 97 85 ("umbrella policy"). In response to those attachments, Dawes claimed that Cincinnati has not provided "evidence admissible under the Rules" that those are the policies

at issue in this case. In its own motion for summary judgment, however, Dawes relied on the same policies, admitting "for purposes of this motion" that Cincinnati's complaint alleged that these are the relevant policies.

It is disingenuous for Dawes to object to the policies Cincinnati attached to its motion for summary judgment without raising any legal or factual argument to support its objection and then to rely on the exact same documents in its own motion for summary judgment. It does not appear, despite Dawes's empty objection, that there is any material dispute at this time that these are the relevant policies for this court to consider in ruling on the motions for summary judgment.

The CGL policy contains GA 472 01 95, a page identified with a handwritten number 19 and entitled "Automatic Additional Insured—Contractor." This document defines as an additional insured, "[t]he person or organization shown in the Schedule but only with respect to liability arising out of [Kelly's] ongoing operations performed for that insured." The "SCHEDULE" portion of the document lists "[a]ny person or organization for whom [Kelly is] required in a written contract, oral agreement or oral contract where there is a certificate of insurance showing that person as an ADDITIONAL INSURED under this policy."

## 3. Pending Motions

Both parties seek summary judgment on the issue of whether Cincinnati has a duty to defend Dawes in the Toedt proceeding. Cincinnati filed its motion (# 74), along with a memorandum of law (# 75), and exhibits (# 76). Dawes responded (# 82), and Cincinnati filed a reply (# 87). Dawes submitted its own motion for summary judgment (# 78) and a memorandum of law in support (# 79). Cincinnati filed a

response (# 83), and Dawes tendered a reply memorandum (# 85).

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R.Civ.P. 56(c); see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating a summary judgment motion, the court focuses on whether any material dispute of fact exists that would require a trial. *Winter v. Minn. Mut. Life Ins. Co.,* 199 F.3d 399, 408 (7th Cir.1999). In making this determination, the court construes all facts and draws all reasonable inferences in favor of the nonmoving party. *King v. Preferred Technical Group,* 166 F.3d 887, 890 (7th Cir.1999). Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, however, the nonmoving party must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. *Michael v. St. Joseph County,* 259 F.3d 842, 845 (7th Cir. 2001).

### 1. Choice of Law

The first issue this court must address is choice of law. Dawes raises the issue in its motion for summary judgment, and although it is unclear how, if at all, the outcome of this case depends on choice-of-law analysis, this court will nonetheless address the issue. The insurance policies are the subject of the dispute before this court, and they are the starting points for choice-of-law analysis. Neither party has identified a choice-of-law provision in the insurance policies at issue, and so Illinois'

choice-of-law rules govern which state's substantive law controls. *Diamond State Ins. Co. v. Chester–Jensen Co. Inc.*, 243 Ill.App.3d 471, 183 Ill.Dec. 435, 611 N.E.2d 1083, 1093 (1993). Illinois employs the "most significant contacts" test, which provides that insurance policies are governed by "the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract." *Westchester Fire Ins. Co. v. G. Heileman Brewing Co., Inc.*, 321 Ill.App.3d 622, 254 Ill.Dec. 543, 747 N.E.2d 955, 961 (2001).

■ Of the factors identified by the Illinois courts, the location of the insured risk is given "special emphasis." *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir.2000). In this case, the insured risks identified in the policy are all located in Illinois. Moreover, Kelly, the primary insured and the party with whom the contract was formed, is domiciled in Illinois. The events giving rise to Dawes's insurance claim also occurred in Illinois.

Dawes maintains that because it is domiciled in Wisconsin, this court should look to Wisconsin law in deciding Cincinnati's duty to defend. Given the posture of this case, however, with the primary dispute being whether Dawes is an insured, Dawes's domicile or where Dawes received a copy of the insurance policy is not relevant. Accordingly, Illinois law will govern the analysis.

### 2. Duty to Defend

■ The question of whether Cincinnati has a duty to defend Dawes in the Toedt action can only be resolved by comparing the allegations in Toedt's complaint with the insurance policy Cincinnati issued to Kelly. *Lapham–Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 166 Ill.2d 520,

211 Ill.Dec. 459, 655 N.E.2d 842, 847 (1995). If it is clear from the face of the complaint that the allegations do not state facts that fall within the policy's coverage, then Cincinnati will have no duty to defend Dawes in that action. *Conn. Indemnity Co. v. DER Travel Serv., Inc.*, 328 F.3d 347, 349 (7th Cir.2003).

■ In evaluating the insurance policy, this court must consider the policy as a whole, including the factual context of the agreement. *Ind. Ins. Co. v. Pana Cmty. Unit. Sch. Dist. Number 8*, 314 F.3d 895, 901, 903 (7th Cir.2002). Unambiguous terms will be interpreted using their plain ordinary meaning and will be given effect as written. *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002). A term will be deemed ambiguous if it is susceptible to more than one reasonable interpretation, and any ambiguities will be construed against the insurer who drafted the agreement. *Commonwealth Ins. Co. v. Stone Container Corp.*, 351 F.3d 774, 777 (7th Cir.2003). But this court will refrain from creating ambiguities in the provisions of the insurance policies. *First Ins.*, 284 F.3d at 804.

In addition to the guidance for interpreting the insurance policy, well-settled doctrine mandates that the underlying complaint be liberally construed in favor of the insured and that any doubt arising during the comparison be resolved in favor of the insured. *Conn. Indemnity*, 328 F.3d at 351.

### 3. The Additional Insured Endorsement

■ Dawes asserts that it is entitled to insurance coverage, and therefore defense in the Toedt action, under GA 472 01 95, the additional insured endorsement on the CGL policy. Dawes believes that the allegations in the Toedt complaint fall within the scope of the additional insured endorsement, which provides coverage "only

with respect to liability arising out of [Kelly's] ongoing operations performed for [Dawes]."

Cincinnati argues that endorsements like the one included in Kelly's insurance policy provide coverage for imputed liability only. In other words, Cincinnati believes that Dawes, as an additional insured, is not covered for its own acts of negligence but would be covered for liability caused by Kelly and imputed to Dawes. In support of this argument, Cincinnati cites to several Illinois Appellate Court decisions: *American Country Insurance Co. v. James McHugh Construction Co.*, 344 Ill. App.3d 960, 280 Ill.Dec. 86, 801 N.E.2d 1031 (2003); *National Union Fire Insurance Co. v. R. Olson Construction Contractors, Inc.*, 329 Ill.App.3d 228, 264 Ill. Dec. 140, 769 N.E.2d 977 (2002); and *American Country Insurance Co. v. Cline*, 309 Ill.App.3d 501, 242 Ill.Dec. 971, 722 N.E.2d 755 (1999). All three of these cases hold that the insurance company had no duty to defend because the underlying complaint did not allege negligence against the named insured, but only alleged negligence on the part of the additional insured.

The additional insured endorsement being analyzed in each case, however, was significantly different than the one at issue here. Specifically, the *McHugh* court reviewed an endorsement that covered only "acts or omissions in connection with [the named insured's work] for that additional insured" and specifically excluded from coverage injury "arising out of any act or omission of the additional insured(s) or any of their employees." *McHugh*, 280 Ill.Dec. 86, 801 N.E.2d at 1034. The endorsement in *Olson* again explicitly provided that "coverage shall not apply to any liability resulting from the certificate holder's own negligence or the negligence of its servants, agents, or employees." *Olson*, 264 Ill.Dec. 140, 769 N.E.2d at 979. And the *Cline* court analyzed an endorsement pro-

viding coverage "limited to liability specifically resulting from the conduct of the Named insured which may be imputed to the Additional Insured." *Cline*, 242 Ill. Dec. 971, 722 N.E.2d at 758. Moreover, that endorsement also specified that the policy does not cover "liability arising out of the claimed negligence of the Additional Insured." *Id.* The material differences in the policies preclude this court from relying on those opinions to hold that the additional insured endorsement in this case provides coverage only for imputed liability. Nothing in the language of the endorsement supports that limitation on coverage.

Cincinnati also maintains that the allegations in the Toedt complaint do not fall within the scope of the additional insured endorsement because Toedt's injury did not "aris[e] out of [Kelly's] ongoing operations performed for [Dawes]." Cincinnati claims that, per the agreement between Dawes and Kelly, Dawes was performing requested maintenance on the crane. The Dawes mechanic was coordinating the repair and was in control of the repair procedures. None of the Kelly mechanics, Cincinnati asserts, were qualified to perform such repairs and could only assist under the direction of the Dawes mechanic. Given these facts, Cincinnati contends, Toedt's injury did not arise out of any operation that Kelly was performing for Dawes, but rather out of work Dawes was performing for Kelly.

In response, Dawes focuses first on the phrase "arising out of" and argues that it is a broad term and can be satisfied by a mere causal connection without the requirement of proximate cause. But for his employment with Kelly, Dawes asserts, Toedt would not have been injured. This court agrees, *see Maryland Casualty Co. v. Chicago & North Western Transportation, Co.*, 126 Ill.App.3d 150, 81 Ill.Dec.

289, 466 N.E.2d 1091, 1094–95 (1984), but the endorsement uses the "arising out of" language with respect to operations Kelly is performing for Dawes. The simple connection of Toedt's employment with Kelly does not appear to satisfy that clause in the endorsement.

Dawes next restates language in the Toedt complaint that Toedt "was required to and was in fact assisting" the Dawes mechanic in the repair work. The notion that Toedt was *required* to assist the Dawes mechanic would seem to indicate that Kelly was performing some operation for Dawes—at the very least providing assistance with repairs. Although Cincinnati argues that Dawes was in charge of the maintenance work, even the crane supervisor for Kelly averred in his affidavit that Kelly employees would assist in repair operations at the request of Dawes. That is consistent with the language in the complaint that Toedt was "required to" help with the crane repair. And the notion that Kelly assisted Dawes in repair work satisfies the insurance policy's requirement that there be an ongoing operation that Kelly was performing for Dawes—here, assistance with maintenance work.

Liberally construing the "arising out of" language in the insurance policy, relying on the plain language of the underlying complaint, and resolving all doubts in favor of Dawes, this court concludes that the factual allegations in the Toedt lawsuit fall within the parameters of coverage as provided by the additional insured endorsement.

This interpretation of the policy is consistent with that discussed in *Casualty Insurance Co. v. Northbrook Property & Casualty Insurance Co.*, 150 Ill.App.3d 472, 103 Ill.Dec. 495, 501 N.E.2d 812 (1986), where the Illinois Appellate Court held that an insurance company had a duty to defend under an endorsement that provided coverage for "liability arising out of operations performed for the additional insured by the named insured." *Cas. Ins.*, 103 Ill.Dec. 495, 501 N.E.2d at 813–15. The court found that, although the underlying complaint did not allege negligence against the named insured, the underlying plaintiff was injured while performing work for the named insured, who was in turn performing operations for the additional insured. *Id.* at 815. The additional insured was therefore entitled to a defense based on the endorsement in the insurance policy. So too, in this case, Dawes in entitled to a defense from Cincinnati.

■ Cincinnati's next argument against a duty to defend is first found in footnote two of its motion for summary judgment. That footnote, which is tacked on to the end of the argument section regarding the additional insured endorsement, reads:

In addition, Dawes has failed to demonstrate the existence of a certificate of insurance showing Dawes as an additional insured for the policy period at issue, *i.e.*, the policy in force at the time of the January 2001 Toedt Accident.

Cincinnati expounds on that argument in its response to Dawes's motion for summary judgment, explaining that the additional insured endorsement provides coverage to a party "for whom [Kelly is] required in a written contract, oral agreement or oral contract where there is a certificate of insurance showing that person as an ADDITIONAL INSURED under this policy." Cincinnati asserts that Dawes can produce no such certificate and is therefore not covered.

Dawes first argues that Cincinnati should be precluded under the "mend the hold" doctrine from raising this argument given that Cincinnati has consistently refused to defend based solely on the interpretation of the clause discussing ongoing operations. Pursuant to Illinois common

law, the "mend the hold" doctrine limits the rights of parties to contract disputes to change their position throughout the lawsuit. *Houben v. Telular Corp.*, 309 F.3d 1028, 1036 (7th Cir.2002); *Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 362–365 (7th Cir.1990). Dawes suggests that it is unfair to allow Cincinnati, at this late date, to change its grounds for refusing to defend Dawes. Given that this argument merited only a footnote in Cincinnati's own motion for summary judgment, this court is inclined to agree that Cincinnati added this as an afterthought, completely separate and apart from its original reasons for declining to defend Dawes.

In addition to its mend-the-hold argument, Dawes suggests that, based on the punctuation in the endorsement, the certificate is only necessary if the agreement is oral and not written. The comma after "written contract" seems to separate that type of agreement from the next two mentioned—"oral agreement or oral contract"—and there is no comma separating the oral agreement and contract from the clause requiring the certificate. Construing this drafting liberally in favor of the insured, this court agrees with Dawes that a certificate is not needed because Dawes and Kelly had a written contract—the Equipment Lease—requiring insurance.

## CONCLUSION

IT IS THEREFORE ORDERED:

(1) Cincinnati's Motion for Summary Judgment (# 74) is DENIED.

(2) Dawes's Motion for Summary Judgment (# 78) is GRANTED. Judgment is entered in favor of Dawes and against Cincinnati regarding the duty to defend in the Toedt action.

(3) This case is terminated.