SIXTH DIVISION

December 10, 1999

No. 1-98-2021

AMERICAN COUNTRY INSURANCE COMPANY, ) Appeal from the 

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. )

)

ROBERT CLINE, ) 

)

Defendant )

) 

(Pepper Construction Company of )

Illinois and Anderson Consulting )

Company, Incorporated, )   The Honorable

) 
Dorothy Kirie Kinnaird
,

Defendants-Appellees). )  Presiding Judge.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, American Country Insurance Company, filed a complaint in the circuit court of Cook County on May 14, 1997, seeking declaratory relief against defendants Robert Cline (Cline), Pepper Construction Company of Illinois (Pepper) and Andersen Consulting Company, Incorporated (Andersen).  This complaint arose out of an underlying tort action in which Cline sought damages for injuries he allegedly sustained on March 28, 1995, while working for Hinsdale Electric Company (Hinsdale), an electrical subcontractor, on a construction project.  Pepper was the general contractor for the construction project, Andersen owned the construction site and plaintiff was Hinsdale's insurer.  Specifically, the complaint for declaratory relief asked the court to find that plaintiff had no duty to defend or indemnify any of the defendants in the underlying tort action.

On April 27, 1998, the circuit court granted Pepper and Andersen's motion for summary judgment, denied plaintiff's motion for a judgment on the pleadings and dismissed the remaining indemnification claim without prejudice.  On May 27, 1998, plain-

tiff filed a timely notice of appeal.

On appeal, plaintiff maintains that the circuit court erred in granting defendant's motion for summary judgment for the following reasons:  (1) according to this court's decision in 
American Country Insurance Co. v. Kraemer Brothers, Inc.
, 298 Ill. App. 3d 805 (1998), an additional insured endorsement in a commercial general liability insurance policy is not void as against public policy because it solely limits coverage for the additional insured to liability specifically resulting from conduct of the named insured, which is imputed to the additional insured; and (2) according to 
Kraemer Brothers
, an additional insured endorsement in a commercial general liability policy limiting coverage for the additional insured to liability specifically resulting from conduct of the named insured, which is imputed to the additional insured, does not afford coverage for liability to an employee of the additional insured's subcontractor.  For the reasons set forth below, we reverse the judgment of the circuit court.

FACTS

Andersen, the owner of property located on Willow Road in Northbrook, Illinois, executed a contract in October of 1994 with Pepper.  According to the contract, Pepper was to serve as the contractor for demolition and renovation work on Andersen's Willow Road property.  On February 7, 1995, Pepper subcontracted with Hinsdale to "[f]urnish all labor, material, equipment and supervis-

ion necessary to complete the DEMO WORK for the above referenced project, in accordance with the contract documents."  Furthermore, the contract documents provided that Hinsdale would "provide labor for *** temporary support of conduit pipe," "provide adequate protection of adjacent construction and materials installed under this Subcontract, be solely responsible for all hoisting of materials and all scaffolding necessary, provide scaffolding or hoisting equipment in conformance with all local code requirements including but not necessarily limited to those of state and federal OSHA," and provide "fall protection *** in strict accordance with OSHA's Fall Protection Requirements."

Hinsdale also agreed to another matter in the subcontract, to "comply with and maintain the insurance specified in the form of Subcontractor's Safety, Indemnity and Insurance Requirements."  That form required Hinsdale to obtain comprehensive general liability (CGL) insurance naming both Pepper and Andersen as additional insureds in its policy covering the Andersen project.  The form stated that Hinsdale's insurance would be "primary to any insurance carried by any of the ADDITIONAL INSUREDS."  Finally, the form also included a paragraph titled "INDEMNIFICATION."  The paragraph provided that Hinsdale "shall indemnify and hold harmless PEPPER" and Andersen "from and against all claims, damages, losses and expenses *** arising out of or resulting from Subcontractor's performance of its work."

From September 13, 1994, through September 13, 1995, Hinsdale was insured by plaintiff via CGL policy No. CMP 0007125.  On February 10, 1995, after entering into the subcontract for the Andersen project, Hinsdale obtained a certificate of insurance from its insurance broker identifying Andersen and Pepper as "additional insureds" under the CGL policy.  The certificate provided that it was "issued as a matter of information only and confers no rights upon the certificate holder.  This certificate does not amend, maintain or alter the coverage afforded by the policies below."  The "BLANKET ENDORSEMENT FOR ADDITIONAL INSUREDS" stated that, "[i]n consideration for a Flat Premium Charge of $150.00, it is understood and agreed that this policy is amended to include *** Blanket Endorsement for Additional Insureds--as per conditions in form AC 2030M."

Form AC 2030M defined "additional insureds" as follows:

"1. 'Who is an Insured' is amended to include as an Insured the person or organiza-

tion shown in the schedule as an Additional Insured.  The coverage afforded to the Addi-

tional Insured is solely limited to liability specifically resulting from the conduct of the Named insured which may be imputed to the Additional Insured.

***

3. This endorsement provides no coverage to the Additional Insured for liability aris-

ing out of the claimed negligence of the Addi-

tional Insured, other than which may be imputed to the Additional Insured by virtue of the conduct of the Named Insured."

On March 28, 1995, Cline was working on the Willow Road project as a journeyman electrician employed by Hinsdale.  According to the complaint Cline filed in the circuit court of Cook County on March 27, 1997 (No. 97 L 3645), he was injured on the Willow Road project site "when a forty (40) foot span of electric conduit pipe fell upon the ladder upon which he was working, crushed the ladder and caused him to fall about six (6) feet from the ladder to the deck of the third floor."  The complaint alleged that Pepper "was actively engaged in the supervision, management and control of the repairs, alterations or construction"; that Andersen "was in charge of and was actively supervising the work in progress"; and as a result both Pepper and Andersen "carelessly and negligently" failed to secure the conduit pipe to the ceiling, failed to design and provide adequate support for the electrical piping, failed to warn that the overhead pipe was not properly secured, failed to warn of the insecure pipe, removed the supports for the conduit, and failed to remove the conduit in smaller sections.

On April 11, 1997, Pepper tendered its defense in the Cline lawsuit to plaintiff.  After plaintiff refused the tender, Pepper filed a two-count third-party complaint against Hinsdale on June 25, 1997, seeking contribution from Hinsdale (count I) and alleging breach of contract (count II).

On May 14, 1997, plaintiff filed its complaint for declaratory relief against Cline, Pepper and Andersen, seeking a declaration that it has "no duty to pay, defend or indemnify" Pepper or Andersen for Cline's injury.  On July 7, 1997, Pepper filed an answer and counterclaim against plaintiff.  Count I of the counterclaim sought a declaration that plaintiff was estopped from denying the duty to defend because Hinsdale's certificate of insurance represented that Pepper was an additional insured under the policy.  Count II stated that if form AC 2030M precludes coverage, then the CGL policy contains a mutual mistake and should be reformed to reflect the mutual intent to create coverage for Pepper.

On August 18, 1997, plaintiff filed a motion to dismiss Pepper's counterclaim.  The circuit court entered an order on December 11, 1997, dismissing both counts of Pepper's counterclaim.  Specifically, as to count I of the counterclaim, the court ruled that the language in the certificate of insurance put Pepper on notice that "it should look to the policy for the terms of coverage."  As to count II, the court found that while there may have been a mutual mistake between Pepper and Hinsdale, there was no agreement at all between Pepper and plaintiff as to the terms of Hinsdale's policy.

On January 22, 1998, plaintiff filed a motion for judgment on the pleadings, asserting it had "no duty to defend or indemnify" Pepper or Andersen based on the language in form AC 2030M.  Then, on February 11, 1998, Pepper and Andersen moved for summary judgment, arguing that plaintiff "has breached its duty to defend Pepper and American Country [
sic
] in connection with the 
Cline
 lawsuit."  At a hearing on April 27, 1998, the court ruled in favor of Pepper and Andersen.  First, the court stated the "general proposition that a court is supposed to resolve any doubt about a duty to defend in favor of the insured."  Next, the court compared the case at bar with 
West Bend Mutual Insurance Co. v. Sundance Homes, Inc.
, 238 Ill. App. 3d 335 (1992), and 
Village of Hoffman Estates v. Cincinnati Insurance Co.
, 283 Ill. App. 3d 1011 (1996).  On the basis of the similarity of the policy language in 
Hoffman Estates
 and 
West Bend
 to that of the policy in this case, the court found that "at the very least, there is a duty to defend here."  The court then made clear that its ruling was not dispositive as to the duty to indemnify.  Accordingly, the court granted Pepper and Andersen's motion for summary judgment and this timely appealed followed.

ANALYSIS

I

Summary judgment is proper if the pleadings, depositions and admissions on file, along with any affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1996); 
Kraemer Brothers
, 298 Ill. App. 3d at 810, citing 
State Farm Mutual Automobile Insurance Co. v. Collins
, 258 Ill. App. 3d 1 (1994).  Accordingly, our review of a ruling on a motion for summary judgment is 
de novo
.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102 (1992).

II

Plaintiff first contends that the additional insured endorse-

ment in its CGL policy is neither illusory nor void as against public policy because it limits coverage to liability resulting from conduct of the named insured which is imputed to the additional insured.  Specifically, it relies upon this court's decision in 
Kraemer Brothers
, which was issued after the trial court ruled on this case, as support for this contention.  Pepper and Andersen counter that we should not follow 
Kraemer Brothers
 in this case because the opinion's discussion of the additional insured endorsement was erroneous 
dicta
.  We agree with plaintiff.

While courts will not enforce an agreement that is contrary to public policy (
O'Hara v. Ahlgren, Blumenfeld & Kempster
, 127 Ill. 2d 333 (1989)), a contract should not be deemed illegal unless it is expressly contrary to the law or public policy (
Rome v. Upton
, 271 Ill. App. 3d 517, 520 (1995)).  The laws and public policy of the State of Illinois permit freedom of contracting between competent parties.  
Electrical Contractors' Ass'n v. A.S. Schulman Electric Co.
, 391 Ill. 333, 339 (1945), citing 
Zeigler v. Illinois Trust & Savings Bank
, 245 Ill. 180 (1910).  In addition, the construction of a contract that renders the agreement enforceable rather than void is preferred.  
Braye v. Archer-Daniels-Midland Co.
, 175 Ill. 2d 201, 217 (1997).  As a result, the issue of whether a contract is contrary to public policy depends on the facts and circumstances of the case, as well as the language of the contract itself.  
Braye
, 175 Ill. 2d at 215-16 (upholding a contribution provision in a construction contract on freedom-of- contract principles even though it potentially rendered an employer liable for more than its worker's compensation limits).  

In the case 
sub judice
, after receiving an additional $150 premium payment from Hinsdale, plaintiff issued an endorsement titled "ADDITIONAL INSUREDS" that is referred to as form AC 2030M.  The form stated that it modified insurance provided under the CGL policy.  The first paragraph of the form contained the following sentence:

"The coverage afforded to the Additional Insured is solely limited to liability speci-

fically resulting from the conduct of the Named Insured which may be imputed to the Additional Insured."

Essentially, plaintiff argues that since this same language was found to be neither illusory nor violative of public policy in 
Kraemer Brothers
, we should also find it to be valid.

Kraemer Brothers
 presented facts and issues similar to those in this case.  There, the same plaintiff, American Country Insurance Company, brought a declaratory judgment action against defendants Kraemer Brothers Construction Company (Kraemer) and United States Fidelity and Guaranty Company (USF&G).  Plaintiff argued that it had no duty to defend or indemnify Kraemer, a general contractor, and its additional insured under a CGL policy originally issued to D.H. Johnson Construction Company (Johnson), a subcontractor, whose employee was injured when he slipped and fell on an unnatural accumulation of snow and ice while working on Kraemer's project.  As in the instant case, the general contractor had engaged the subcontractor to complete specific work on a construction project.  Under the terms of the subcontract, Johnson was required to have Kraemer named as an additional insured on its CGL policy.  The CGL policy contained the same language, endorsements and restrictions as the policy in the case at bar.

When Johnson's employee filed a complaint, he alleged that Kraemer was negligent in its maintenance and supervision of the construction project, but his complaint never named Johnson as a defendant.  Kraemer subsequently filed a third-party complaint for contribution against Johnson, alleging that Johnson was negligent in its maintenance and supervision of the project.  Kraemer then tendered its defense to plaintiff, informed plaintiff that it had put its own general liability insurer, USF&G, on notice of the lawsuit, but instructed USF&G not to engage in a defense.  Plaintiff rejected the tender and filed its complaint for declaratory judgment.  Both parties filed cross-motions for summary judgment, and the trial court ruled in favor of the defendants, finding that plaintiff had a duty to defend Kraemer.  An appeal followed and this court reversed.  
Kraemer Brothers
, 298 Ill. App. 3d 805.

This court first addressed whether Kraemer's receipt of a certificate of insurance bound it to the terms of Johnson's CGL policy, even though its loss occurred before the policy declarations were completed.  The court found that since the certificate included a disclaimer stating that it had been issued " 'AS A MATTER OF INFORMATION ONLY' " and " 'SUBJECT TO ALL OF THE TERMS EXCLUSIONS, AND CONDITIONS OF SUCH POLICIES,' " Kraemer was bound by the exclusions and conditions of the policy.  
Kraemer Brothers
, 298 Ill. App. 3d at 809-11.  

Next, the court determined that the plaintiff did not violate public policy by requiring Kraemer to tender defense of the suit to any other insurer with applicable insurance.  
Kraemer Brothers
, 298 Ill. App. 3d at 811-13.  Specifically, the court reasoned that American Country's policy requirement that Kraemer tender the defense to another available insurer was enforceable and that the parties were free to enter into the insurance contract.  
Kraemer Brothers
, 298 Ill. App. 3d at 813.

Finally, and most relevant to our case, the court noted that plaintiff had raised the issue of "whether American Country had a duty to defend Kraemer, an additional insured, under an insurance policy covering negligence of the named insured imputed to the additional insured where the only allegations of negligence against the named insured" arose out of the third-party complaint filed by the additional insured.  
Kraemer Brothers
, 298 Ill. App. 3d at 813.  The court then stated that, "[i]n view of our holding that Kraemer breached a provision of the policy and is not entitled to a defense, it is not necessary to address this issue."  
Kraemer Brothers
, 298 Ill. App. 3d at 814.  However, the court continued and stated that "the allegations in the complaint and third-party complaint are not within the scope of coverage" for imputed liability.  
Kraemer Brothers
, 298 Ill. App. 3d at 814.  In response to Kraemer's argument that plaintiff's coverage was illusory because it was virtually impossible to conceive of a factual scenario where Kraemer could be held vicariously liable for a subcontractor's acts or omissions, the court found that "the imputed negligence coverage in the policy includes claims based in strict liability" where the general contractor has a nondelegable duty.  
Kraemer Brothers
, 298 Ill. App. 3d at 814.

In the case at bar, plaintiff offers several reasons for this court to follow 
Kraemer Brothers
.  First, it asserts that since Hinsdale received an unlimited number of "blanket" additional insurance endorsements for a single $150 premium, it makes sense that the additional insureds would only receive coverage for a narrow class of claims, such as those arising in strict liability, or other claims falling within the language of form AC 2030M.  We agree.  It would be inequitable to allow the additional insured to avoid responsibility for its own conduct and seek full coverage when the insurer has not been compensated.  This limitation on coverage recognizes that businesses in the construction industry carry coverage for liability arising out of their own work, and assumes that Pepper would have its own general liability coverage.  If an additional insured seeks the same level of coverage that it already receives from its own insurer, then insurers like plaintiff should receive a larger premium payment.

Second, plaintiff notes that it only provided Hinsdale with coverage for the risk of liability arising out of Hinsdale's work.  Plaintiff adds that it never agreed to cover new risks arising from the work of the additional insureds.  This point is well taken, particularly since the portion of Pepper's "Subcontractor's Safety, Indemnity and Insurance Requirements" discussing comprehensive general liability stated "[t]he policy must include PEPPER, the Owner, the Architect and others if required in the Contract Documents, as ADDITIONAL INSUREDS."  The record shows that Hinsdale complied with this requirement by adding Pepper and Andersen to its CGL policy, and plaintiff then provided a limited form of coverage for an additional $150 in premiums.

Third, plaintiff states that since the Illinois Department of Insurance has approved plaintiff's policy, the imputed liability provisions in the additional insured endorsement must be valid.  Here, plaintiff has filed its endorsement with the Director of Insurance and the endorsement has not been rejected.  See 215 ILCS 5/143(2)(West 1994).  While the Director's silence is not conclu-

sive, it is "entitled to great weight as against the contention that such a provision is against public policy."  
Kirk v. Financial Security Life Insurance Co.
, 75 Ill. 2d 367, 376 (1978).

Pepper and Andersen counter by arguing that even though 
Kraemer Brothers
 involved the same additional insured endorsement and found no duty to defend, the real issue in that case was whether the additional insured could rely on the representations in the certificate of insurance.  Thus, they ask us to disregard the portion of the 
Kraemer Brothers
 opinion discussing the validity of the additional insured endorsement on the grounds that it is erroneous 
dicta
.

When a court offers an opinion as to a matter that is not necessary to the disposition of the litigation, that material is 
dictum
.  See 
Ko v. Eljer Industries, Inc.
, 287 Ill. App. 3d 35, 41 (1997).  However, there are two types of 
dictum
.  
Obiter dictum
 is " 'a remark or opinion uttered by the way,' " which is " 'not binding authority or precedent.' "  
Ko
, 287 Ill. App. 3d at 41, quoting 
Cates v. Cates
, 156 Ill. 2d 76, 80 (1993).  Judicial 
dictum
, on the other hand, refers to a portion of a decision that is deliberately passed upon by the court and is not essential to the disposition of the case.  
Cates v. Cates
, 156 Ill. 2d 76, 80 (1993).  Judicial 
dictum
, unlike 
obiter dictum
, is generally entitled to weight and should be followed unless found to be erroneous.  
Cates
, 156 Ill. 2d at 80; see also 
Berg v. Allied Security, Inc., Chicago
, 297 Ill. App. 3d 891, 896-98 (1998).

Pepper and Andersen first argue that 
Kraemer Brothers
 erroneously interpreted "imputed liability to mean strict liabil-

ity."  They assert that the terms "vicarious liability" and "strict liability" do not mean the same thing and this court was incorrect in equating the two.  This argument appears to state that it was incongruous for the 
Kraemer Brothers
 court to find that the additional insured endorsement was not illusory because the additional insured would be covered for a claim "based in strict liability where the general contractor is held to have a duty that it cannot delegate."  
Kraemer Brothers
, 298 Ill. App. 3d at 814.  We find that this is not the same as saying that strict liability and vicarious liability are the same.
(footnote: 1)  Instead, the 
Kraemer Brothers
 opinion used strict liability in an illustrative manner to explain a "factual scenario wherein Kraemer could be held vicariously liable for a subcontractor's acts or omissions."  
Kraemer Brothers
, 298 Ill. App. 3d at 814.  This interpretation of the language in 
Kraemer Brothers
 is supported by the court's use of the word "includes" in the sentence:  "however, the imputed negligence coverage in the policy 
includes
 claims based in strict liability ***."  (Emphasis added.)  
Kraemer Brothers
, 298 Ill. App. 3d at 814, citing Restatement (Second) of Torts §§416 through 429 (1965).  To be sure, Webster's Third New International Dictionary defines "include" as:  "to place, list, or rate as a part or  component of a whole or of a larger group, class, or aggregate."  Webster's Third New International Dictionary 1143 (1986).  Thus, 
Kraemer Brothers
 did not state that vicarious liability and strict liability are the same thing.  Therefore, we find that Pepper and Andersen have misinterpreted the language of 
Kraemer Brothers
.

Next, Pepper and Andersen argue that if 
Kraemer Brothers
 correctly decided that imputed liability means strict liability under the additional insured endorsement, then the court erred in finding that such coverage was not illusory. 

An insurance policy "'should not be given a strained, forced, unnatural, or unreasonable construction, or a construction which would *** lead to an absurd conclusion.'"  
State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group
, 285 Ill. App. 3d 115, 121 (1996), quoting 45 C.J.S. 
Insurance
 §366, at 89 (1993).  Moreover, courts will not construe or enforce a policy in a way that renders the coverage provided of no value to the insured.  
Glazewski v. Coronet Insurance Co.
, 108 Ill. 2d 243, 250 (1985).

In the instant case, two sophisticated parties, Pepper and Hinsdale, exercised their freedom of contract and negotiated a subcontract.  Hinsdale agreed to provide electrical work on the Willow Road project run by Pepper.  As part of the subcontract, Hinsdale was required to place Pepper and Andersen on its CGL policy as additional insureds.  However, the certificate of insurance issued by plaintiff, as held in 
Kraemer Brothers
, placed an onus on Pepper to ascertain the extent of coverage.  
Kraemer Brothers
, 298 Ill. App. 3d at 811, citing 
Pekin Insurance Co. v. American Country Insurance Co.
, 213 Ill. App. 3d 543 (1991).  Form AC 2030M modified the extent of coverage by stating that "[t]he coverage afforded to the Additional Insured is solely limited to liability specifically resulting from the conduct of the Named Insured which may be imputed to the Additional Insured."  Although this modification limited the coverage available to the additional insureds, as noted above, plaintiff has offered several valid reasons why this limitation is fair and enforceable.  Pepper and Andersen's reliance on the dissent in 
National Union Fire Insurance Co. v. Glenview Park District
, 158 Ill. 2d 116 (1994), which stated an additional insured endorsement should not be enforced if it is illusory and provides no coverage at all, is misplaced because 
Kraemer Brothers
 explains exactly how an additional insured would obtain coverage under this same endorsement.

Therefore, since both Hinsdale and Pepper were sophisticated businesses that often executed subcontracts, it is reasonable for us to assume that any questions as to coverage could have been negotiated prior to execution of the subcontract.  As a result, we find the endorsement does not violate the public policy of the State of Illinois and Pepper and Andersen were bound by its terms.  In addition, although the 
Kraemer Brothers
 decision deliberately passed upon the issue of the additional insured endorsement, it offered several paragraphs of well-reasoned analysis on the question presented in the case at bar.  Thus, we also find that even though the court rendered judicial 
dictum
, it is not erroneous and we will follow it.

III 

Plaintiff's second contention is that since an insurer's duty to defend depends on whether the underlying complaint alleges facts within or potentially within coverage of the insurance policy, it has no duty to defend in this case because Cline's complaint did not allege negligence on the part of the named insured, Hinsdale.  According to plaintiff, 
Kraemer Brothers
 supports this position as well.  We agree.

In the field of insurance law, it is well settled that the duty to defend is broader than the duty to indemnify.  
West Bend
, 238 Ill. App. 3d at 337, citing 
Zurich Insurance Co. v. Raymark Industries, Inc.
, 118 Ill. 2d 23 (1987).  As a result, even if an insurer ultimately may not be obligated to indemnify, if the allegations in a complaint state a cause of action that gives rise to the possibility of recovery under the policy, the insurer's duty to defend is called into play.  
West Bend
, 238 Ill. App. 3d at 337, citing 
Western Casualty & Surety Co. v. Adams County
, 179 Ill. App. 3d 752 (1989).  Furthermore, because the threshold for pleading duty to defend is low, when there is a doubt about such duty, it is to be resolved in favor of the insured.  
Management Support Associates v. Union Indemnity Insurance Co.
, 129 Ill. App. 3d 1089, 1096 (1984).  However, "the court 'need not wear judicial blinders' and may look beyond the complaint at other evidence appropriate to a motion for summary judgment (for example, *** the third-party complaint against [the subcontractor])."  
West Bend
, 238 Ill. App. 3d at 338, quoting 
Travelers Insurance Cos. v. P.C. Quote, Inc.
, 211 Ill. App. 3d 719 (1991).

Cline filed his single-count complaint in the circuit court of Cook County on March 27, 1997.  Relevant to the issues in this case, paragraphs five through eight of the complaint alleged the following:

"5. That at all times relevant hereto ANDERSEN was the owner or, alternatively, was in possession of the building at 3773 Willow Road.

6. That PEPPER was a general contractor working for ANDERSEN under plans and specifications drawn by ANDERSEN and that ANDERSEN was in charge of and was actively supervising the work in progress.

7. At the said time and place, Plaintiff, ROBERT CLINE, was employed as an electrician by Hinsdale Electric Co., Inc., a subcontrac-

tor, which was engaged by the Defendants to do certain electrical work in connection with the construction.

8. As such employee of said subcontrac-

tor, Plaintiff was working under the direction and control of various employees of the Defen-

dants, PEPPER and ANDERSEN, and was required to work upon certain electrical pipes which were suspended from the ceiling of the third floor of the building."

The complaint also alleged that Pepper and Andersen were under a duty to "properly design, construct and keep the premises in a reasonably safe condition for the use of workers in the building" and that their acts of negligence or omission caused injury to Cline. 

On June 25, 1997, Pepper filed a two-count third-party com-

plaint against Hinsdale.  Count I of the third-party complaint seeks contribution and alleges that Cline "was injured at the job site while acting within the scope of his employment with Hinsdale" and that it was Hinsdale's negligence or omission that caused Cline's injury.  Count I then added that Hinsdale has no protection from liability because of the indemnification provision in the subcontract agreement in which Hinsdale agreed to hold Pepper harmless from claims arising out of its work as a subcontractor.  Count II alleged that Hinsdale breached its contract with Pepper by failing to obtain an additional insured endorsement.

Plaintiff argues that the allegations in Cline's complaint do not allow for coverage under the additional insured endorsement.  Specifically, plaintiff refers to the language of the additional insured endorsement stating that coverage is "solely limited to liability specifically resulting from the conduct of the Named Insured which may be imputed to the Additional Insured."  Pepper and Andersen respond that an insurer has a duty to defend an additional insured under an imputed liability endorsement to the named insured's policy when the pleadings in the underlying tort action "impliedly recognize the possibility that parties other than the additional insureds, such as the named insured, may have had control over the plaintiff's injuries."

Here, Cline's complaint does not allege any negligence by Hinsdale, much less negligence that could be imputed to Pepper.  In fact, the only mention of Hinsdale in Cline's complaint is that he was an employee of Hinsdale and Hinsdale was engaged to do "certain electrical work" on the Willow Road project.  On the other hand, Pepper and Andersen are accused of several instances of negligence and/or omission in Cline's complaint.  Plaintiff asserts that 
Village of Hoffman Estates v. Cincinnati Insurance Co.
, 283 Ill. App. 3d 1011 (1996), is instructive on this issue.  

In 
Hoffman Estates
, an insurance company issued an insurance policy to a general contractor and then issued an endorsement to the policy adding the Village of Hoffman Estates as an additional insured.  The endorsement provided that the "Persons Insured provision is amended to include as an INSURED the person or organization named above but only with respect to liability incurred solely as a result of some act or omission of the NAMED INSURED."  In the underlying lawsuit, the plaintiff alleged negligence on the part of both the additional insured and the named insured.  On cross-motions for summary judgment on the issue of the insurer's duty to defend, the trial court found no duty to defend.  This court agreed and stated:

"By the express terms of the endorsement, [the named insured's] acts or omissions must be the sole ground for alleging liability against the [additional insured] for coverage to apply.  After carefully reviewing the record, we note that the [underlying] complaint alleged liability directly against both defendants ***. *** We find that the [underlying] complaint is not based solely on the acts of [the named insured]. Rather, the liability was alleged against plaintiff directly.  Thus, the explicit terms of the endorsement are not met ***."  (Emphasis omitted.)  
Village of Hoffman Estates
, 283 Ill. App. 3d at 1014. 

The case 
sub judice
 involves a similar endorsement.  Yet unlike in 
Village of Hoffman Estates
, the named insured, Hinsdale, is never named as a defendant in the Cline complaint, while the additional insureds are accused of several acts of negligence.  Therefore, it is unclear how the additional insured endorsement granting coverage to additional insureds "solely limited to liability specifically resulting from the conduct of the Named Insured which may be imputed to the Additional Insured" has been satisfied, considering Hinsdale has not been accused of any wrongful conduct.  

Pepper and Andersen respond that 
Hoffman Estates
 is distinguishable because the additional insured endorsement in that case is not the same as that in the instant case, and that 
the 
West Bend
 decision should control here.  We disagree.  First, we read both the endorsement in 
Hoffman Estates
 and that in the case at bar as limiting coverage of additional insureds "solely" to liability resulting from the conduct of the named insureds.  Cline's complaint does not make this allegation.  Second, while it is true that 
West Bend
 relied on allegations in both the underlying complaint and the third-party complaint to find a duty to defend (
West Bend
, 238 Ill. App. 3d at 337), if we look to the allegations in Pepper's third-party complaint for contribution, we must then assume that both the named insured and the additional insureds are responsible.
(footnote: 2) This assumption would take us outside the ambit of the coverage provided in plaintiff's additional insured endorsement because it limits coverage to liability solely and specifically resulting from the conduct of the named insured.

Pepper and Andersen urge us to follow 
West Bend
, as the trial court did, and find that a liberal reading of both the underlying complaint and the third-party complaint requires that we find plaintiff has a duty to defend.  However, in 
West Bend
, the underlying complaint alleged that the general contractor was "one of the parties in control" of the construction project, which "impliedly recognizes the possibility that other parties [(the subcontractor)] may also have been in charge."  
West Bend
, 238 Ill. App. 3d at 337.  When the court read this language in conjunction with the third-party complaint for contribution, it found that the subcontractor could have been at fault, so its insurer had a duty to defend.  
West Bend
, 238 Ill. App. 3d at 337.

We find that the circuit court improperly relied on 
West Bend
 in determining that plaintiff has a duty to defend.  The allegations in Cline's complaint do not raise the possibility that Hinsdale was in charge of work or that its conduct caused the underlying injury.  Even if we do look to the third-party complaint, Pepper's contribution claim acknowledges the possibility of its own negligence and liability.  This sort of claim lies outside the scope of the additional insured endorsement because it does not allege the sole negligence of Hinsdale that may be imputed to Pepper.  Instead, it raises the possibility of multiple negligent parties.  As in 
Kraemer Brothers
, the additional insured endorsement does not provide coverage in this case.

CONCLUSION

For the aforementioned reasons, we find that 
Kraemer Brothers
 is well reasoned and controls the disposition of the instant case.  Therefore, we reverse the judgment of the circuit court of Cook County and determine that plaintiff does not have a duty to defend the additional insureds. 

Reversed.

Campbell
 and 
O'Brien
, JJ., concur.

FOOTNOTES
1:     
Black's Law Dictionary defines "imputed" as "attributed vicariously."  Black's Law Dictionary 758 (6th ed. 1990).  See, 
e.g.
, 
Zajac v. St. Mary of Nazareth Hospital Center
, 212 Ill. App. 3d 779 (1991).

2:

A contribution claim presumes that both the third-party plaintiff and the third-party defendant are liable, since the third-party plaintiff will only require contribution if it was first held liable to the underlying plaintiff.  See 740 ILCS 100/2(a) (West 1994).