132 P.3d 758 (2006)
132 Wash.App. 430
EQUILON ENTERPRISES LLC, d/b/a Shell Oil Products Us, a Delaware Limited Liability Company, Appellant,
v.
GREAT AMERICAN ALLIANCE INSURANCE COMPANY, a foreign insurance company, Respondent.
No. 56030-1-I.
Court of Appeals of Washington, Division 1.
April 3, 2006.
Publication Ordered April 20, 2006.
*759 Nick Steven Verwolf, Roger Ashley Leishman, Davis Wright Tremaine, Seattle, WA, Davis Wright Tremaine LLP, Bellevue, WA, for Appellant.
David E. Prange, Abbott & Prange PC, Portland, OR, for Respondent.
APPELWICK, A.C.J.
¶ 1 Powell-Christensen, a fuel distributor, contracted with service stations to brand those outlets as Shell stations and delivered Shell fuel to the stations for retail sale. As required by its contract with Shell, Powell-Christensen added Shell as an insured on its commercial general liability policy, but only for liability arising out of Powell-Christensen's operations. A young man was assaulted at one of the service stations and sued Shell under several theories, including the theory that the service station owners, alleged to have negligently maintained the premises, were agents or apparent agents of Shell. Great American, the issuer of Powell-Christensen's policy, refused to defend or to indemnify Shell for the settlement into which Shell entered. Shell argues that its liability under agency or apparent agency arose out of Powell-Christensen's operations, and so was covered under the additional insured endorsement, because Powell-Christensen was responsible for Shell's signs at the service station. We agree. We reverse the trial court's grant of summary judgment in Great American's favor and remand for entry of judgment in Shell's favor on the issue of coverage under the additional insured endorsement.

FACTS
¶ 2 This case presents the question of construction of the language in an insurance contract. Powell-Christensen, a wholesale distributor of fuel, contracted with Shell to buy Shell's fuel and distribute the fuel to various service stations. The contract gave Powell-Christensen the right to use Shell signs and other identifying materials at the service stations to sell the fuel. The contract also required that Powell-Christensen indemnify Shell against all claims arising out of any injury or damage caused by or happening in connection with Powell-Christensen's sale or use of Shell's products.
¶ 3 Powell-Christensen complied with Shell's indemnification requirement and added Shell as an additional insured on its commercial general liability (CGL) policy with Great American Insurance Company. The endorsement amended the CGL policy to include Shell as an insured "only with respect to liability arising out of [Powell-Christensen's] operations or premises owned by or rented to [Powell-Christensen]." (Emphasis added.)
*760 ¶ 4 On March 27, 1999, 16-year-old Said Aba Sheikh was assaulted and severely beaten by several youths who had been loitering in the parking lot of the South Seattle Market (the Market). Although the attack took place over an allegedly prolonged period of time, the Market employees did not do anything to stop it and did not call the police.
¶ 5 Aba Sheikh sued numerous defendants under various theories of liability, including the Market and Shell. The complaint alleged that the Market knew or should have known that its premises were susceptible to criminal activity, and failed to take steps to protect patrons from third party criminal acts on the premises. The complaint also alleged that the Market did not maintain the premises in a safe manner and did not train its clerks in how to disperse groups of delinquents and respond to criminal activity and emergency situations. The complaint alleged that Shell owed the same duty as the Market, or, in the alternative, was liable for the acts and omissions of the Market under agency principles.
¶ 6 After receiving the complaint, Shell tendered its defense to Great American, invoking coverage as an additional insured under Powell-Christensen's policy. Great American denied coverage and refused to defend Shell, explaining that the complaint did not mention Powell-Christensen, refer to Powell-Christensen's operations or premises, or make allegations arising out of Powell-Christensen's operations or premises.
¶ 7 Shell filed a motion for summary judgment to dismiss all of Aba Sheikh's claims against Shell. The trial court dismissed the claims predicated on actual agency, holding that Shell had no ownership or contractual rights regarding the Market. But the trial court did not dismiss the apparent agency claim, holding that there was some evidence suggesting that at the time of the attack, Aba Sheikh was "acting in reliance upon the understanding that this was `a Shell station' and therefore would have adequate security." Prior to trial, Shell settled the apparent agency claim for $300,000. Shell also incurred over $550,000 in defense fees and expenses.
¶ 8 After settling, Shell filed a complaint for declaratory relief and damages, alleging it was entitled to defense and indemnity with respect to Aba Sheikh's claims. Great American moved for summary judgment. Shell filed a cross-motion for summary judgment. The trial court granted Great American's motion and denied Shell's motion. Shell appeals, requesting that the court remand with directions to grant Shell's motion for summary judgment.

ANALYSIS

I. Duty to Defend
¶ 9 Shell contends that Great American owed a duty under the additional insured endorsement to defend Shell against Aba Sheikh's claims. Shell contends that Powell-Christensen's operations included establishing retail outlets and licensing them to use and display Shell's logos, pursuant to the contract between Powell-Christensen and Shell. Shell argues that Aba Sheikh's agency claims against Shell were asserted based on the presence of the Shell signs at the Market. Accordingly, Shell argues, Shell's liability arose out of the presence of the Shell signs at the Market.
¶ 10 An insurer has a duty to defend if the complaint, construed liberally, alleges facts which, if proven, impose liability within the policy's coverage. Unigard Ins. Co. v. Leven, 97 Wash.App. 417, 425, 983 P.2d 1155 (1999). If the alleged claims are clearly not covered, then the insurer has no duty to defend. Cle Elum Bowl, Inc. v. North Pac. Ins. Co., 96 Wash.App. 698, 703, 981 P.2d 872 (1999). The interpretation of an insurance contract is a matter of law. McDonald v. State Farm Fire & Cas. Co., 119 Wash.2d 724, 730, 837 P.2d 1000 (1992).
¶ 11 Great American argues that Shell's argument wrongly focuses on Aba Sheikh's legal theories, and does not focus on the facts underlying the complaint. Great American contends that Shell must prove that Aba Sheikh alleged his injuries arose out of Powell-Christensen's operations.
¶ 12 However, the policy language does not name Shell as an additional insured solely for injuries arising out of Powell-Christensen's operations, but rather for liability arising *761 out of Powell-Christensen's operations. Liability is "the quality or state of being legally obligated or accountable." BLACK'S LAW DICTIONARY 932 (8th ed.2004). Aba Sheikh alleged, based on facts to be proven, that Shell was liable for the Market's acts "under principles of agency." This agency relationship is based on the presence of the Shell signs. Liberally construed, the facts if proven could establish an agency or apparent agency relationship, which could lead to liability.[1] The question is whether the liability was within the scope of coverage of the additional insured endorsement.
¶ 13 The language of the additional insured endorsement is broad. If Great American had wanted only to insure Shell for liability Shell incurred relating to injuries arising out of Powell-Christensen's operations, it could have put precisely that language into the endorsement.[2] But it did not. The court can "neither disregard contract language which the parties have employed nor revise the contract under a theory of construing it." Wagner v. Wagner, 95 Wash.2d 94, 101, 621 P.2d 1279 (1980). Further, although we do not believe that the contract language is ambiguous, if we did find it ambiguous we would construe it in Shell's favor. See McInturff v. Dairyland Ins. Co., 56 Wash.App. 773, 775, 785 P.2d 843 (1990) (when language in a policy is unclear, the court must construe it in favor of the insured).
¶ 14 Great American next contends that Shell's interpretation of the phrase "arising out of" is strained and produces "absurd and unintended results". However, other courts around the country have accepted a broad interpretation of the phrase "arising out of" in similar CGL policies. For example, in Marathon Ashland Pipe Line LLC v. Maryland Cas. Co., 243 F.3d 1232, 1239 (10th Cir.2001), the court, interpreting Wyoming law, found that the "arising out of" language carries a "natural consequence" level of causation. The injured worker had been hired by the named insured at the additional insured's request. Although the worker was paid by the named insured, all of his work was done at the additional insured's site under the additional insured's direction and control. The worker was injured on the additional insured's work site. Marathon, 243 F.3d at 1235. The court held that additional insured's liability arose out of the named insured's operations because he was present and working at the site as a result of the named insured's agreement to provide workers for the additional insured's sites. Marathon, 243 F.3d at 1239. Other courts have found coverage under facts similar to those in Marathon. See, e.g., Mid-Continent Cas. Co. v. Swift Energy Co., 206 F.3d 487, 496-501 (5th Cir.2000); Roy Anderson Corp. v. Transcon. Ins. Co., 358 F.Supp.2d. 553, 560-62 (S.D.Miss.2005); Elec. Ins. Co. v. Nat'l Union Fire Ins. Co., 346 F.Supp.2d 958, 966-68 (2004); Mikula v. Miller Brewing Co., 281 Wis.2d 712, 701 N.W.2d 613, 620-24, review denied 286 Wis.2d 98, 705 N.W.2d 660(Wis.Ct.App.2005).
¶ 15 Other courts have also interpreted "arising out of" in a broad way. The court in Acceptance Ins. Co. v. Syufy Enters., 69 Cal. App.4th 321, 81 Cal.Rptr.2d 557, 561 (1999) held that the language "broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." Some courts hold that "but for" causation is sufficient. Maryland Cas. Co. v. Chicago & N.W. Transp. Co., 126 Ill.App.3d 150, 81 Ill.Dec. 289, 466 N.E.2d 1091, 1095 (1984). Others require a standard in between "but for" and proximate causation. Merchants Ins. Co. v. United States Fid. & Guar. Co., 143 F.3d 5, 9 (1st Cir.1998) (applying Massachusetts law); McIntosh v. Scottsdale Ins. Co., 992 F.2d *762 251, 254-55 (10th Cir.1993) (applying Kansas law). Although the majority of the cases discussed involve an injured employee of the named insured, the broad language applies to the causal connection in the instant case.
¶ 16 Courts have also found coverage in factual circumstances not involving an injured worker. For example, in McIntosh, 992 F.2d at 254, a company running a street festival named the city as an additional insured with respect to liability arising out of operations performed for the city by or on behalf of the named insured. A festival-goer, seeking a portable toilet provided by the festival company, left the public pathway and fell while jumping over a retaining wall on city property. McIntosh, 992 F.2d at 252. The court held that the injuries, and the city's liability, arose out of the festival company's operations, since the festival-goer was injured while walking from the festival to the company's toilets. McIntosh, 992 F.2d at 255. This broad interpretation of "arising out of" supports our finding of coverage here.
¶ 17 Great American further contends that any liability did not arise out of Powell-Christensen's operations, as its operations did not include security at the Market. Here, the liability did arise out of the presence of the Shell signs, which were placed by Powell-Christensen under contract with the Market as part of Powell-Christensen's operations. Powell-Christensen's contract with Shell required that if that contract terminated or Powell-Christensen stopped buying Shell's fuel for re-sale, then Powell-Christensen had to stop using Shell's identifications. The contract between Powell-Christensen and the Market required the Market to return the Shell signs to Powell-Christensen if the contract were terminated. Thus, the Shell signs were only to be present in conjunction with Powell-Christensen's contract with and fuel delivery to the Market. Powell-Christensen was responsible for their presence. The presence of the signs was an aspect of Powell-Christensen's ongoing operations.[3]
¶ 18 Great American's contention that the purpose of CGL policies is to protect the additional insured from the negligence of the named insured is not accepted in a majority of jurisdictions. To support its claim, Great American cites Davis v. LTV Steel Co., 128 Ohio App.3d 733, 716 N.E.2d 766 (1998). However, as the court in Mikula, 701 N.W.2d at 622, noted, "it appears that the majority of cases conclude otherwise."[4] Negligence of the named insured negligence does not seem to be required by the majority of courts addressing the issue of endorsement of an additional insured. See, e.g., Marathon, 243 F.3d at 1237; Swift, 206 F.3d at 499-500; McIntosh, 992 F.2d at 254-55; Syufy Enters., 81 Cal.Rptr.2d at 560-63. Neither must the named insured be included as a party to the suit. See Swift, 206 F.3d at 490.
¶ 19 Great American also contends that the additional insured endorsement was only intended to indemnify Shell to the extent Shell required in its contract with Powell-Christensen. The contract between Shell and Powell-Christensen requires Powell-Christensen to indemnify Shell against "all claims, suits, liabilities, losses and expenses ... arising out of any injury, disease or death of persons ... or damage to property ... caused by or happening in connection with [Powell-Christensen's] loading, transportation, unloading, storage, handling, sale or use of the Products sold hereunder." But the language of the contract between Shell and Powell-Christensen is irrelevant when the language at issue  that of the additional insured endorsement, is unambiguous. The language *763 of the additional insured endorsement required Great American to defend Shell against Aba Sheikh's claims.
¶ 20 Based on the foregoing case law and analysis, we cannot say that the alleged liability of Shell is "clearly not covered" by the language of the additional insured endorsement. Liberally construed, the language in the additional insured endorsement would cover any of Powell-Christensen's operations under its contract with Shell, without limitation. This gives rise to a duty to defend.

II. Duty to Indemnify
¶ 21 Shell also contends that Great American was obligated to indemnify Shell once Shell settled. The duty to indemnify generally arises when the plaintiff in the underlying action prevails on facts that fall within the policy's coverage. W. Nat'l Assurance Co. v. Hecker, 43 Wash.App. 816, 820-21, 719 P.2d 954 (1986). Here, Aba Sheikh prevailed because Shell settled the claim for $300,000.
¶ 22 Great American had a duty to indemnify Shell for the amount paid to Aba Sheikh. This is because the same facts that created Great American's duty to defend  Shell's liability arising out of Powell-Christensen's operations  also caused Shell to settle and Aba Sheikh to prevail.

III. Attorney Fees
¶ 23 Shell requests its attorney fees on appeal under RAP 18.1 and Olympic Steamship Co. v. Centennial Ins. Co., 117 Wash.2d 37, 54, 811 P.2d 673 (1991). RAP 18.1 authorizes a fee award if applicable law grants the right to recover those fees. In Olympic, the court held that a fee award is required where the insurer compels the insured to assume the burden of legal action to obtain the full benefit of the insurance contract. Olympic, 117 Wash.2d at 53, 811 P.2d 673. That is what occurred here.
¶ 24 We reverse and remand for entry of summary judgment in favor of Shell on the issue of coverage under the additional insured endorsement. We grant Shell's attorney fees on appeal.
WE CONCUR: COX, C.J., and AGID, J.
NOTES
[1] As noted above, the trial court dismissed the actual agency claims on summary judgment.
[2] Indeed, some CGL policies have different language. See, e.g., Marathon Ashland Pipe Line LLC v. Maryland Cas. Co., 243 F.3d 1232, 1237 (10th Cir.2001) (policy stated that coverage is limited to liability arising out of the named insured's ongoing operations performed for the additional insured); Am. Country Ins. Co. v. Cline, 309 Ill.App.3d 501, 242 Ill.Dec. 971, 722 N.E.2d 755, 758, (1999) (policy stated that coverage "is solely limited to liability specifically resulting from the conduct of the Named insured which may be imputed to the Additional Insured"); A.F. Lusi Constr., Inc. v. Peerless Ins. Co., 847 A.2d 254, 259 (R.I.2004) (coverage only with respect to named insured's operations, work, or facilities owned or used by named insured).
[3] Great American also notes that Shell had the final authority to license the use of its trademark. Great American contends that this means Shell's liability arose out of its own operations, not Powell-Christensen's. However, use of the trademark flowed from the contract between Shell and Powell-Christensen, which also authorized placement of the signs. Powell-Christensen's operations were not divorced from the liability merely because Shell had ultimate authority over the use of its trademark.
[4] The rationale is that if the endorsement covered only the additional insured's liability for the tortious acts of the named insured, the coverage would be essentially illusory. Mikula, 701 N.W.2d at 623. This is because if the additional insured were held vicariously liable, "it would presumably have an action for indemnity against the tortfeasor regardless of whether it was `covered' as an additional insured." Mikula, 701 N.W.2d at 623.