IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| UNIGARD INSURANCE COMPANY, a foreign insurer, | ) ) ) | No. 80234-8-I |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| WAUSAU UNDERWRITERS INSURANCE COMPANY, a foreign insurer, | ) ) ) ) | |
| | ) | UNPUBLISHED OPINION |
| Respondent. | ) ) ) | |

VERELLEN, J. — Where a landlord is covered as an additional insured on a bar's commercial general liability (CGL) policy for liability "arising out of the ownership, maintenance or use" of the bar's leased premises, Washington case law broadly interprets the "arising out of" language. A verbal altercation that began inside the bar and culminated in an act of physical violence just outside the bar, in a common area, resulting in the death of a patron, "arose out of" the use of the bar's leased premises. Because the incident "arose out of" the bar's leased premises, the landlord was covered under the additional insured endorsement of the bar's CGL policy and, consistent with the total insuring intent of all the parties, the landlord's own CGL policy provided excess coverage.

An excess insurer has no duty to defend or indemnify a primary insurer until the primary insurer's coverage is exhausted. As a consequence, the bar's CGL insurer is not entitled to equitable subrogation or contribution from the excess insurer, who paid the balance of the amount required for settlement after the bar's CGL insurer paid its policy limits. And the bar's CGL insurer is not entitled to attorney fees under Olympic Steamship Company v. Centennial Insurance Company.[1]

We affirm.

## FACTS

Munchbar was located in the Bellevue Square Mall. Around closing time one night, two groups of patrons, Dain Cilley and coworkers and Jacob Steinle and his friend, engaged in an "aggressive" verbal altercation inside the bar.[2] The confrontation escalated outside the bar, in a common area of Bellevue Square Mall, where Cilley punched Steinle, killing him.

Steinle's estate sued Munchbar and Kemper Development Company, which is the owner of Bellevue Square Mall and Munchbar's landlord, under various theories of liability. The estate alleged that Kemper was negligent for failing to protect Steinle from the harm he suffered on mall property, failing to intervene in the altercation while Kemper's security guards were on site, and failing to take action given Munchbar's history of problems, when Kemper knew or should have

---

[1] 117 Wn.2d 37, 811 P.2d 673 (1991).
[2] Clerk's Papers (CP) at 733.

known that violence was likely to occur. The estate alleged negligence against Munchbar on theories of overservice and premises liability.

Munchbar filed a motion for summary judgment, arguing it was not liable under either the overservice or the premises liability claim. The estate conceded that it could not prove the overservice claim. The trial court granted summary judgment in favor of Munchbar on the premises liability claim. Munchbar was dismissed as a party, and Kemper remained in the lawsuit.

Munchbar had a CGL policy with Unigard, and Kemper had its own CGL policy with Wausau Underwriters. Consistent with the lease, Unigard provided coverage of Kemper as an additional insured for damages "arising out of the ownership, maintenance or use" of the bar's leased premises. The "other insurance" provisions of the Wausau CGL policy covering Kemper provided that its coverage was excess to "[a]ny other primary insurance available [to Kemper], covering liability for damages arising out of the premises" for which Kemper had been added as an additional insured.[3] The "other insurance" provisions of the Unigard CGL policy provides it is primary with exceptions that are not applicable here.

Unigard defended both Munchbar and Kemper with a reservation of rights. Wausau refused a tender of defense after Munchbar was granted partial summary

---

[3] CP at 193.

judgment. Unigard continued to defend. The underlying lawsuit settled with Unigard paying its policy limits and Wausau contributing an additional $500,000.

Unigard sued Wausau for equitable contribution and subrogation, and Wausau filed a motion for summary judgment. Unigard argued that once Munchbar was exonerated from liability, the remaining allegations implicated Kemper's negligence only and Wausau had primary coverage as to those claims. The trial court granted summary judgment in favor of Wausau.

Unigard appeals.

## ANALYSIS

### I. Commercial General Liability Coverage

Unigard argues that Wausau provided primary coverage for Kemper because the altercation exclusively "arose out of" Kemper's negligence and thus, Kemper did not qualify as an additional insured under the Unigard CGL policy.

"We review an order granting summary judgment de novo."[4] Summary judgment is appropriate "'only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'"[5] We view the evidence in the "light most favorable to the nonmoving party."[6]

---

[4] Loeffelholz v. Univ. of Wash., 175 Wn.2d 264, 271, 285 P.3d 854 (2012).

[5] Bavand v. OneWest Bank, 196 Wn. App. 813, 824-25, 385 P.3d 233 (2016) (quoting Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014)).

[6] Loeffelholz, 175 Wn.2d at 271.

"'Primary insurance' [is the insurance] that attaches immediately upon the happening of a loss.'"[7]  Excess insurance is involved only when the primary insurer has exhausted its obligations to defend or indemnify.[8]  "An excess carrier's obligation to pay and defend begins when, and only when, the limits of the primary insurance policy are exhausted."[9]  The question whether overlapping policies are primary or excess must be determined "in light of the total insuring intent of all the parties.  On that basis, we consider the nature and purpose of [the] primary and excess insurance policies as well as the function of [the] 'other insurance' clauses."[10]  "Generally, when two policies each contain an 'other insurance' clause purporting to make the policy excess over the other policy, our courts have disregarded the clauses as 'mutually repugnant.'"[11]  Conversely, if the "other insurance" clause of one policy provides it is excess and a second policy does not include any conflicting provision, then we give effect to the excess coverage provision.[12]

---

[7] Diaz v. Nat'l Rental Car Sys. Inc., 143 Wn.2d 57, 62, 17 P.3d 603 (2001) (quoting BLACK'S LAW DICTIONARY 807 (7th ed. 1999)).

[8] Truck Ins. Exch. of Farmers Ins. Grp. v. Century Indem. Co., 76 Wn. App. 527, 531, 887 P.2d 455 (1995).

[9] Rees v. Viking Ins. Co., 77 Wn. App. 716, 719, 892 P.2d 1128 (1995).

[10] Safeco Ins. Co. of Ill. v. Auto. Club Ins. Co., 108 Wn. App. 468, 479, 31 P.3d 52 (2001) (citing Allstate Ins. Co. v. Frank B. Hall & Co. of Cal., 770 P.2d 1342, 1346 (Colo. App. 1989)).

[11] Safeco Ins. Co. of Ill. v. Country Mut. Ins. Co., 165 Wn. App. 1, 4, 267 P.3d 540 (2011) (internal quotation marks omitted) (quoting Polygon Nw. Co. v. Am. Nat'l Fire Ins., 143 Wn. App. 753, 777, 189 P.3d 777 (2008)).

[12] See id. at 5-6 (discussing Safeco Ins. Co of Am. v. Pac. Indem. Co., 66 Wn.2d 38, 401 P.2d 205 (1965)); see also LEE R. RUSS, THOMAS F. SEGALLA, 15

In deciding whether "in light of the total insuring intent of all the parties,"[13] the Wausau policy is excess to the coverage provided to Kemper as an additional insured under the Unigard policy, we look to the policies and the lease provisions.

The Unigard policy provides Kemper with coverage as an additional insured "with respect to liability arising out of the ownership, maintenance or use of that specific part of the premises" leased to Munchbar.[14]   The "other insurance" provisions of the Wausau policy expressly provide it is excess over "(b) Any other primary insurance available to [Kemper] covering liability for damages arising out of the premises or operations . . . for which [Kemper has] been added as an additional insured by attachment of an endorsement."[15]  The parallel "other insurance" provisions of the Unigard policy contains identical language.[16]  It is primary except when the provisions for excess coverage in paragraph (b) apply.

Here, none of those exceptions to primary coverage by Unigard apply.  The lease provides context for the obligations of the insurers.  The terms of the lease provide that Munchbar's insurance policy "shall be primary and noncontributing with respect to any policies carried by [Kemper], and that any coverage carried by

COUCH ON INSURANCE 3D § 219.44 (1999) ("It is unnecessary to apply the total insuring intent test, however, where the 'other insurance' clauses in overlapping insurance policies provide a clear and consistent answer as to allocation of primary and excess coverage.").

[13] Safeco, 108 Wn. App. at 479.

[14] CP at 491.

[15] CP at 193.

[16] CP at 471.

[Kemper] shall be excess insurance . . . and [Kemper] shall be named as an additional insured."[17]

Taken together, the lease provisions that Munchbar is to include Kemper as an additional insured, the provisions of the Unigard additional insured endorsement of Kemper, and the parallel "other insurance" provisions of both policies reveal the total insuring intent of the parties is that the Wausau policy provides only excess coverage of Kemper if Kemper qualifies for coverage under the additional insured provision in the Unigard policy.

In turn, that depends on whether the claim for Kemper's liability "arises out of" the premises or operation of the bar. "Washington law . . . gives a broad scope to the phrase 'arising out of' in an insurance policy."[18] "The phrase requires only a causal contribution, and means less than 'proximately caused by.'"[19] Washington courts have interpreted "arising out of" as meaning "originating from", "growing out of" or "flowing from."[20]

---

[17] CP at 597.

[18] Seaway Properties, LLC v. Fireman's Fund Ins. Co., 16 F. Supp. 3d 1240, 1251 (W.D. Wash. 2014); see also Equilon Enters. LLC v. Great Am. All. Ins. Co., 132 Wn. App. 430, 437-39, 132 P.3d 758 (2006).

[19] Seaway, 16 F.Supp.3d at 1251.

[20] National Sur. Corp. v. Immunex Corp., 162 Wn. App. 762, 772-73, 256 P.3d 439 (2011) ( "Washington courts have previously defined 'arising out of' as meaning 'originating from,' 'having origin in,' 'growing out of,' or 'flowing from.'") (citations omitted), affirmed, 176 Wn.2d 872 (2013); Australia Unlimited Inc. v. Hartford Cas. Ins. Co., 147 Wn. App. 758, 773-74, 198 P.3d 514 (2008) (advertising trade dress claim and policy covering injury "arising out of one or more of the following offenses, including '[c]opying, in your advertisement' a person's or organizations advertising idea or style of advertisement.' The policy therefore requires some causal connection between the injury and the insured's advertising

In Equilon v. Great American Alliance Insurance Company, a fuel distributor contracted with Shell to buy fuel and distribute it to service stations, which were required to put up Shell signs as part of buying the fuel.[21] The contract required that the fuel distributor indemnify Shell "against all claims arising out of any injury or damage caused by or happening in connection with [the fuel distributor's] use of Shell's products."[22] The fuel distributor complied with Shell's request and listed Shell as an additional insured on its CGL policy.[23] When an individual was assaulted at one of the service stations and sued Shell, Shell tendered its defense to the fuel distributor's CGL insurer.[24] The insurer refused to defend Shell.[25] Because the distributor mandated the use of Shell signs where it distributed fuel, the assault "arose out of" the distributor's sale of Shell fuel and the insurer had a duty to defend Shell.[26]

In Seaway Properties, LLC v. Fireman's Fund Insurance Company, a woman fell as she stepped down from a concrete platform located between a building's parking lot and the entrance to a restaurant.[27] The woman fell in the

---

activity before there is . . . a duty to defend." (alterations in original) (internal quotation marks omitted)).

[21] 132 Wn. App. 430, 433-34, 132 P.3d 758 (2006).

[22] Id. at 434.

[23] Id.

[24] Id.

[25] Id. at 434-35.

[26] Id. at 439-40.

[27] 16 F.Supp.3d 1240, 1244 (W.D. Wash. 2014).

common area owned by the landlord but not on the premises leased to the restaurant. The lease required the restaurant to maintain a CGL policy and cover the landlord as an additional insured.[28] The additional insured clause stated that it "covered the landlord as an additional insured for liability arising out of the use of [the] premises that [the landlord] leased to the [restaurant]."[29] Relying on Equilon, the court held that the landlord was covered under the restaurant's CGL policy because the accident "arose out of" the restaurant's leased premises.[30]

Similar to Shell in Equilon and the landlord in Seaway, Kemper is an additional insured for liability "arising out of" the operation of the underlying business. Consistent with Equilon and Seaway, Steinle's death originated in and flowed from the conflict that began inside Munchbar. Therefore, the claim asserting Kemper's liability "arose out of" the use of Munchbar's leased premises.

Specifically, Cilley physically assaulted Steinle in a common area of Bellevue Square mall just outside Munchbar. But the verbal altercation between Cilley's coworkers and Steinle and his friend began inside Munchbar. There were "loud voices" inside the bar and Leonard Lee, Cilley's coworker, confirmed that the "aggressive" dialogue started in the bar and that "some words [were exchanged] with the intent to escalate."[31] According to Cilley, as the two groups turned the

---

[28] Id.

[29] Id.

[30] Id.

[31] CP at 756, 767.

corner to exit Munchbar, the argument "started again," and this time, physical violence ensued.[32] Because the initial altercation began inside Munchbar while both men were patronizing it, the altercation "arose out of" Munchbar's operation of the leased premises. Kemper is covered under the additional insured endorsement in the Unigard policy. Consistent with the Wausau "other insurance" provisions, Wausau is "excess over" the primary Unigard policy.

Unigard's premise is that once Munchbar was exonerated from liability the only remaining claim was Kemper's sole negligence, a claim for which Unigard provided no coverage. Unigard focuses upon portions of the lease allocating responsibility for the bar to Munchbar and the mall to Kemper. But we reject the premise. Unigard ignores that a claim against Kemper alleging liability for damages can "arise out of" the operation of Munchbar, even if the bar is not held liable in tort.

Unigard argues "arising out of" should not be interpreted broadly. But its attempts to distinguish Equilon are unpersuasive. As this court in Equilon emphasized, "If the [insurer] had wanted to insure Shell for liability Shell incurred relating only to injuries arising out of the [fuel distributor's] operations, it could have put precisely that language into the endorsement."[33] Here, Unigard could have limited its additional insured endorsement to cover only those incidents occurring inside Munchbar's leased premises. But it did not. And we "'can neither disregard

---

[32] CP at 757.

[33] Equilon, 132 Wn. App. at 436.

10

contract language which the parties have employed nor revise the contract under a theory of construing it.'"[34]

"The duty to defend generally is determined from the 'eight corners' of the insurance contract and the underlying complaint."[35] "An insurer has a duty to defend if the complaint, construed liberally, alleges facts which, if proven, impose liability within the policy's coverage."[36] "The duty to indemnify generally arises when the plaintiff in the underlying action prevails on facts that fall within the policy's coverage."[37] Because here, Wausau is an excess insurer for Kemper as to the remaining claims of liability for damages, it had no duty to defend or indemnify until the primary coverage through Unigard was exhausted.[38]

As a result, Unigard's claims against Wausau for equitable contribution and equitable subrogation necessarily fail. Equitable contribution permits one insurer to recover from another insurer "where both are independently obligated to indemnify or defend the same loss."[39] "In deciding whether one insurer is liable for equitable contribution to another, 'the inquiry is whether the nonparticipating

---

[34] Id. at 437 (quoting Wagner v. Wagner, 95 Wn.2d 94, 101, 621 P.2d 1279 (1980)).

[35] Expedia, Inc. v. Steadfast Ins. Co., 180 Wn.2d 793, 803, 329 P.3d 59 (2014).

[36] Equilon, 132 Wn. App. at 435-36.

[37] Id. at 440.

[38] Rees, 77 Wn. App. at 719.

[39] Mut. of Enumclaw Ins. Co. v. USF Ins. Co., 164 Wn.2d 411, 419, 191 P.3d 866 (2008).

coinsurer had a legal obligation . . . to provide [a] defense [or] indemnity coverage for the . . . claim or action prior to [the date of settlement].'"[40]

Wausau was not independently obligated to defend Kemper and indemnify Unigard for the same loss. Because Wausau had no legal obligations as an excess insurer to provide any defense or indemnity on behalf of Kemper until the Unigard additional insured coverage was exhausted, Unigard is not entitled to equitable contribution.

An insurer may be equitably subrogated to another when the insurer who was not primarily responsible benefitted the other by covering a loss.[41] Because Unigard was the primary insurer and paid only its policy limits, it has no right to equitable subrogation from excess insurer Wausau, who paid the balance required for settlement.

II. Attorney Fees

Unigard requests attorney fees on appeal under Olympic Steamship and as the subrogee to Wausau. Because Unigard is not entitled to equitable subrogation

---

[40] Id. at 420 (emphasis omitted) (alterations in original) (internal quotation marks omitted) (quoting Safeco Ins. Co. of Am. v. Superior Court, 140 Cal. App. 4th 874, 879, 44 Cal. Rptr. 3d 841 (2006)).

[41] See Truck Ins. Exch. of Farmers Ins. Grp. v. Century Indem. Co., 76 Wn. App. 527, 530-31, 887 P.2d 455 (1995) ("Equitable subrogation is a legal fiction whereby a person who pays a debt for which another is primarily responsible is subrogated to the rights and remedies of the other.").

from Wausau and does not prevail on a coverage dispute, it is not entitled to attorney fees.[42]

We affirm.

_____

WE CONCUR:

_____          _____

---

[42] <u>Ainsworth v. Progressive Cas. Ins. Co.</u>, 180 Wn. App. 52, 82, 322 P.3d 6 (2014) ("Because [the insured] prevailed in his coverage dispute below, we award reasonable appellate costs and fees.").